Shannon C. Wilhite, SBN 330143
Shannon C. Wilhite, Attorney at Law
P.O. Box 692
Willow Creek, CA 95573
T: (707) 599-5420
E-mail: scmwilhite.attorneyatlaw@gmail.com
*Attorney for Patricia A. E. Miroth and Stanley R. Miroth,*
*Plaintiffs herein*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

*Sacramento*

| | |
|---|---|
| PATRICIA A. E. MIROTH, STANLEY R. MIROTH<br><br>PLAINTIFFS,<br><br>vs.<br><br>COUNTY OF TRINITY, TRINITY COUNTY HEALTH AND HUMAN SERVICES, TRINITY COUNTY CHILD WELFARE SERVICES, LIZ HAMILTON, individually and as an employee of the County of Trinity, MARIO ANGELONE, individually and as an employee of the County of Trinity, NICOLE HAYS BRADFORD, individually and as an employee of the County of Trinity, ALLISON BALLARD, individually and as an employee of the County of Trinity, MEGAN SHOLTY-SCALZO, individually and as an employee of the County of Trinity, ANGELA BERGLUND, individually and as an employee of the County of Trinity, ASHLEY POQUETTE, individually and as an employee of the County of Trinity, DEBBIE CARTER, individually, DOES 1-20 inclusive<br><br>DEFENDANTS. | Case No. 2:22-CV-00460-KJM-JDP<br><br>PETITIONERS' AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (42 U.S.C. 1983), VIOLATION OF STATE CIVIL RIGHTS, FRAUD, INEFFECTIVE ASSISTANCE OF COUNSEL, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, DECLARATORY AND INJUNCTIVE RELIEF<br><br>DEMAND FOR JURY TRIAL |

Comes now Plaintiffs PATRICIA ("TRISH") MIROTH and STANLEY MIROTH ("STAN") whom submit an amended complaint (Eastern District Local Rules Rule 220 and Federal Rule of Civil Procedure Rule15) and allege as follows:

## I.

## JURISDICTION AND INTRADISTRICT ASSIGNMENT

1.     **JURISDICTION.** Plaintiffs bring this civil rights lawsuit pursuant to 42 U.S.C. Section 1983 to redress the wrongful conduct by defendants, who at all times herein acting under color of state law, of rights secured to plaintiffs under the First, Fourth, and Fourteenth Amendments of the United States Constitution, and under 42 U.S.C. Section 671(a)(16), and California Civil Rights law (Unruh Act) C.C. 50-52, et. seq., where applicable.

2.     Jurisdiction is conferred on this Court by 42 U.S.C. Section 1343(a)(3) and 1343(a)(4), which provide original jurisdiction in the Court for all suits brought pursuant to 42 U.S.C. Section 1983. Jurisdiction is also conferred by 28 U.S.C. 1331(a) because claims for relief derive from the United States Constitution and the laws of the United States. Jurisdiction of this Court over the claim for Declaratory Relief is conferred by 28 U.S.C. Section 2201.

3.     This Court has supplemental jurisdiction over plaintiffs' state law causes of action pursuant to 28 U.S.C. § 1367(a).

4.     **INTRADISTRICT ASSIGNMENT.** Venue is proper in the Eastern District of California, Sacramento, pursuant to 28 U.S.C. Sections 1391 and 1392, in that the events and circumstances herein alleged occurred in Trinity County, and at least one defendant resides in Trinity County. Under 28 U.S.C. § 1391 venue is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a

substantial part of the events or omissions giving rise to the claim occurred…or (3) a judicial

district in which any defendant may be found, if there is no district in which the action may

otherwise be brought." 28 U.S.C. § 1391(b); *see e.g. Payne v. City of Atascadero*, No C03-4892

SI, 2003 WL 22939227, at *1 (N.D. Cal. Nov. 18, 2003); *Clark v State of Cal.* No. 86-3927,

1989 WL 18798 at * 1 (9th Cir. Feb. 21, 1989).

     5.     As stated herein and herewith all defendants "reside" as in their official capacity

as Trinity County Employees in Trinity County, and all events giving rise to Plaintiffs' claims

occurred in Trinity County, California. As such, the County of Trinity lies in what is the area of

service for the Eastern District of California.

     6.     Plaintiffs have exhausted their remedies, or otherwise complied with state law

requirements for the filing of a Tort Claim Notice pursuant to California G.C. § 905. Plaintiffs

filed their California Claim for Money Damages on November 16, 2021, 45 days have passed

and defendant, Trinity County, has not responded with a notice as required, as such the

defendants have waived any defense to the time limit for presenting a claim (Cal. Govt. Code

911.3).

## II.

## STATING A CLAIM UPON WHICH RELIEF CAN BE GRANTED

    **7.**     **STATING A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

     Plaintiffs state a claim per *Monell* because it is Trinity County's policies, customs,

and practices which gave cause for Plaintiffs' 42 U.S.C. Section 1983 violation. "A local

government may not be held liable for it employees' violations of section 1983 unless the

constitutional violation was caused by its official policy, practice or custom.'" *Kerkeles v. City of*

*San Jose*, 199 Cal.App.4th 1001, 1015-1016; *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n. 55, 691, 694 (1978); 436 U.S. 658.  Plaintiffs provide facts hereinbelow sufficient to support this allegation (*Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n. 55, 691, 694 (1978); *see Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989); *see Leon v. Cty. of San Diego*, 115 F. Supp. 2d 1197, 1200 (S.D. Cal. 2000) ("Because the sheriff is named in his official capacity, this suit is no different from a suit against the County itself.") A section 1983 claim is also proper against the all COUNTY of TRINITY ("COUNTY") defendants stated herein because the COUNTY social workers made a series of knowingly false statements and intentionally omitted exculpatory information during the dependency proceedings. (*See Beltran v. Santa Clara County* (9th Cir. 2008) 514 F.3d 906, 908, where "social workers are not entitled to absolute immunity from claims that they fabricated evidence during an investigation or made false statements in a dependency petition"). More specifically, it is the COUNTY policies, practices, and customs that allowed social workers to not backup their allegations with exculpatory evidence that they knew or should have known existed, omit critical facts in court documents, fail to make collateral contacts and to include this information in court documents, use a fourteen plus year old false allegation of drug use and mental health issues against plaintiff and refuse to allow her to rebut that with medical evidence, not provide a safety plan, not consider in home placement, fail to document a current and immediate threat, consciously disregard efforts of parents to ameliorate the situation, of not disciplining, reprimanding, or punishing social workers who are known to have lied, misrepresented facts, or withheld exculpatory evidence, and of deeming a parent that denied allegations against them of

physical, sexual, or emotional abuse as "resistant," "uncooperative," "in denial," or "minimizing" their situation.

### III.

### SUBJECT MATTER JURISDICTION

8**.    SUBJECT MATTER JURISDICTION.** Plaintiffs assert subject matter jurisdiction grounded on 42 U.S.C. Section 1983 which allows for the general federal question statute, *see* 28 U.S.C. Sections 1331 and 1343 (a)(3), and seek compensatory damages. Plaintiffs, in addition to compensatory damages, assert that extrinsic fraud exists in this case and as such provides an exception to the *Rooker-Feldman*[1] doctrine which will allow a federal district court to hear her injury by the state court judgment and enjoin or reverse the adverse state court decision and as such is not a de facto appeal because Plaintiffs have not asserted fraud prior nor did the appeal address a fraud complaint.

### 1.    EXTRINSIC FRAUD IS AN EXCEPTION TO THE ROOKER-FELDMAN DOCTRINE.

Extrinsic fraud on a state court is an exception to the *Rooker-Feldman* doctrine. *Kougasian v TMSL, Inc.* 359 F3d 1136, 1141 (9th Cir. 2004). This complaint is not a de facto appeal from the state court judgment which is prohibited under *Rooker-Feldman,* because (1) plaintiffs never alleged fraud in any of the state court proceedings (2) this complaint does not cite a legal wrong as an erroneous decision by the state court, but rather (3) asserts as a legal wrong as a illegal act or omission by defendants. *See Noel v. Hall,* 341 F.3d 1148, 1164 (9th Cir. 2003); *see Bianchi v. Rylaarsdam,* 334 F.3d 895,898 (9th Cir. 2003). "*Rooker-Feldman* [] applies only

---

[1] The doctrine is created from and based on *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

PATRICIA  A. E. MIROTH, STANLEY R. MIROTH V. COUNTY OF TRINITY ET. AL. - 5

when the federal plaintiff both asserts as her injury a legal error or errors by the state court and seeks as her remedy relief from the state court judgment." *Kougasian v. TMSL, Inc.* 359 F3d at 1140.

Plaintiffs herein do seek relief from the judgments of the state courts but it is by defendants wrongful conduct that has caused them harm not the legal errors of the state courts. *Id.* Because Plaintiffs never alleged fraud prior to this complaint, alleging fraud now, where it was not recognized in the past, should not be considered a legal error, nor should this complaint be considered under issue or claim preclusion statutes.

### 2. THIS COMPLAINT ALLEGES, IN ADDITION TO FRAUD, CONSTITUTIONAL VIOLATIONS UNDER 42 U.S.C. 1983 AND AS SUCH MEETS SUBJECT MATTER JURISDICTION REQUIREMENTS REGARDLESS IF THE COURT FINDS FRAUD OR NOT.

This complaint alleges more than fraud; plaintiffs bring this civil rights action pursuant to 42 U.S.C. Section 1983 to redress the wrongful acts of defendants, at all times acting under color of state law, and of rights secured to plaintiffs under the United States Constitution including the 1st, 4th, and 14th Amendments. As such, jurisdiction is conferred on this Court by 28 U.S.C. Section 1343(3) and 1343(4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. Section 1983. Jurisdiction is also conferred by 28 U.S.C. Section 1331(a) as a claim for relief which derives from the United States Constitution and the laws of the United States. Claims for Declaratory Relief find jurisdiction in this Court under 28 U.S.C. Section 2201.

### V.

### PARTIES

**9. PARTIES.** At all times relevant to this Complaint, Plaintiff PATRICIA MIROTH, ("TRISH") is an individual, who at all times relevant to the facts and circumstances herein, was residing in Trinity County or Shasta County. TRISH is the natural parent of minor Aylaa Miroth ("A.M.") and minor Stosh Miroth ("S.M."), minor children. As of the filing of this complaint A.M. is eight years of age and S.M. is three years of age.

10.     Plaintiff STANLEY MIROTH ("STAN") is an individual, who at all times relevant to the facts and circumstances herein, was residing in Trinity County or Shasta County. STAN is the natural parent of A.M. and S.M., minor children.

11.     At all times relevant herein, prior to the removal of A.M. and S.M. by defendants, TRISH and STAN raised, nurtured, provided guidance, and cared for A.M. and S.M. A.M. and S.M. were loved by TRISH and STAN at all times.

12.     Defendant COUNTY OF TRINITY ("COUNTY") is and was a public entity existing under the laws of the State of California at all times applicable herein.

13.     TRINITY COUNTY HEALTH AND HUMAN SERVICES ("HHS") is a subdivision or entity of the COUNTY. HHS developed, promoted, and/or sanctioned the policies, patterns, and actions under which its employees as individual defendants committed the damage complained of herein.

14.     TRINITY COUNTY CHILD WELFARE SERVICES ("CWS") is a subdivision or entity of the COUNTY and a departmental unit within and under HHS or singularly, is responsible for the promulgation of policies, patterns, and the common scheme under, or in violation of which, the individual defendants committed the acts or omissions complained of herein.

15.     Plaintiffs sue all agencies and departmental units of COUNTY under the designation of COUNTY herein, and COUNTY thereby.

16.     At all times applicable herein, the director of Trinity County Health and Human Services and Trinity County Child Welfare Services LIZ HAMILTON ("HAMILTON"), acted under the color of state law per her designation as an employee of defendant COUNTY and upon Plaintiffs' information and belief, resides within the exterior boundaries of COUNTY. HAMILTON is sued in herein in both her individual and her official capacity as an employee of COUNTY.  As HHS director, HAMILTON was responsible for development, implementation, oversight, and compliance of CWS policy and programs, legal interpretation, training and educating of, and reviewing conduct and performance of social workers reporting to her. Plaintiffs are informed and believe defendant ANGELONE reported to HAMILTON.

17.     CWS program manager, MARIO ANGELONE ("ANGELONE"), whose acts as alleged herein were performed under the color of state law, was at all times material hereto, upon Plaintiffs' information and belief, a resident of COUNTY and employed by CWS a division of HHS, which is a departmental unit of Defendant COUNTY. As program manager ANGELONE was responsible for the training, educating, supervision of and evaluating conduct of social workers reporting to him and conducting investigations of alleged child abuse. Plaintiffs are informed and believe and thereon allege that SHOLTY-SCALZO, BERGLUND, POQUETTE, BALLARD,  and BRADFORD reported to ANGELONE. ANGELONE is herein sued in his individual capacity and official capacity as an employee of COUNTY.

18.     Defendant NICOLE HAYS BRADFORD ("BRADFORD"), whose acts as alleged herein were performed under the color of state law, and was at all times material hereto, upon

Plaintiffs' information and belief, a supervisor and/or emergency response worker, employed by the CWS, a departmental unit of Defendant COUNTY. As supervisor, BRADFORD was responsible for training, supervision of and evaluating conduct of social workers reporting to her and conducting investigations of alleged child abuse. Plaintiffs are informed and believe and thereon allege that SHOLTY-SCALZO, BERGLUND, POQUETTE, and BALLARD reported to BRADFORD. Defendant BRADFORD is sued herein in both her individual and in her official capacity as an employee of COUNTY.

19.    Defendant ALLISON BALLARD ("BALLARD"), whose acts as alleged herein were performed under the color of state law, and at all times material hereto, upon Plaintiffs' information and belief, a case worker and/or emergency response worker, employed by CWS, a departmental unit of Defendant COUNTY. Defendant BALLARD is sued herein in both her individual and in her official capacity as an employee of COUNTY.

20.    Defendant, MEGAN SHOLTY-SCALZO ("SHOLTY-SCALZO"), whose acts as alleged herein were performed under the color of state law, and at all times material hereto, upon Plaintiffs' information and belief, a case worker and/or emergency response worker, employed by CWS, a departmental unit of Defendant COUNTY. Defendant SHOLTY-SCALZO is sued herein in both her individual and in her official capacity as an employee of COUNTY.

21.    Defendant, ANGELA BERGLUND ("BERGLUND"), whose acts as alleged herein were performed under the color of state law, and at all times material hereto, upon Plaintiffs' information and belief, a case worker and/or emergency response worker, employed by CWS, a departmental unit of Defendant COUNTY. Defendant BERGLUND is sued herein in both her individual and in her official capacity as an employee of COUNTY.

22.    Defendant, ASHLEY POQUETTE ("POQUETTE"), whose acts as alleged herein were performed under the color of state law, and at all times material hereto, upon Plaintiffs' information and belief, a case worker and/or emergency response worker, employed by CWS, a departmental unit of Defendant COUNTY. Defendant POQUETTE is sued herein in both her individual and in her official capacity as an employee of COUNTY.

23.    Defendant, DEBBIE CARTER ("CARTER"), whose acts as alleged herein acted individually and in concert with, and/or aided and /or abetted CWS workers in committing the acts herein alleged and as such is responsible for injury resulting from defamatory actions on both TRISH and STAN. At all times relevant to the complaint herein CARTER was a resident of TRINTY or SHASTA counties. Defendant CARTER is sued herein her individual capacity.

24.    Plaintiffs are ignorant of the true names and identities of those defendants sued herein as DOES 1 through 20. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named defendants was in some manner legally responsible and by their conduct caused the damages and injuries complained of by plaintiffs herein.

25.    Plaintiffs are informed and believe, and based upon such information and belief, allege that, at all times, that defendants, acting under the color of law, each of them participated as a knowing agent or employee of their co-defendants with the consent, knowledge, and approval of each and every co-defendant and each defendant acted in agreement with or approval of each act by each of the other defendants and as such are responsible for the acts and omissions, and resulting damage and injury to plaintiffs alleged herein.

26.    Plaintiffs are informed and believe, and thereon allege, that each of the named individual defendants herein, knowing and willingly with a common intent, conspire to deprive

plaintiffs of their rights, liberties, and interests in the comfort, care, and association with their

children, where these rights are afforded to plaintiffs under the California State Constitution, and

the United States Constitution. As such, defendants, each of them, acted in conspiracy to damage

plaintiffs and inflict severe emotional injury upon them.

## IIII.

## FACTUAL ALLEGATIONS

**27.    FACTUAL ALLEGATIONS.** A.M. was born on 12/24/2012. Father, STAN was

incarcerated from the time A.M. was two months old until she was five. TRISH provided all care

for her daughter including but not limited to taking her to the doctor for a speech impediment,

which was remedied by ear tubes, enrolling and completing preschool and preK, and following

the recommendation of California First Five by bringing A.M. to Far Northern Regional Center

where she was diagnosed with autism spectrum disorder. There were no referrals to CWS during

the majority of A.M.'s life.

28.    On or about on August 22, 2013 Tehama County Child Welfare received a call

alleging general neglect of A.M. due to concerns of mother having mental health issues. "CWS

investigated and found the home to be clean with plenty of food and provisions for the child." It

is suspected this call was one of the first of many calls and actions by Debbie Carter

("CARTER") TRISH's mother-in-law to remove TRISH and STAN's children.

29.    On or about June 1, 2017, TRISH spoke with Detective Ward at the Trinity

County Sheriff's Office regarding her step-father, Lonnie Smith, a registered sex offender,

moving in with her and A.M. Detective Ward received the Megan's List file from Shasta County

showing that Lonnie Smith sought to live with TRISH and A.M. Detective Ward of Trinity

County Sherrif Department approves the situation stating his conviction is old. Lonnie Smith

moves in on or about July 1, 2017.

30.     On or about June 1, 2017, TRISH contacts her step-sister, Leslie, the victim of

sexual abuse by her father Lonnie Smith, through Facebook messenger and asks about Lonnie.

Her step-sister said told TRISH she had forgiven him and has a relationship with him which

includes him spending time with her children.

31.     On or about May 17, 2017, STAN was released from prison and returned to live

with his wife, TRISH and A.M.  STAN began taking pain killers around September 2017 and

between this date and the date of A.M.'s removal his daily consumption of alcohol increased.

32.     On or about on January 31, 2018, Trinity County Child Welfare received a referral

alleging general abuse of A.M. due to her defecating in her pants at school and only wanting her

parents to help. The RP states the child appears well kept and appropriate.

33.     On or about March 2018, SHOLTY-SCALZO came to visit TRISH home due to a

referral. SHOLTY-SCALZO raised concerns about having a registered sex offender in the home.

In addition, SHOLTY-SCALZO told TRISH at this time that there was no reason that another

daughter, C.M., 14 years earlier had been taken from TRISH.

34.     On or about March 28, 2018, TRISH leaves with A.M. to Oregon, to get space

from the verbal abuse, due to STAN'S alcohol dependence and abuse, which she does for two

nights. Subsequently, upon returning, TRISH meets with CWS employee, SHOLTY-SCALZO

again who states to TRISH she would help her move out of home and provide various other

relevant services. TRISH then reaches out to SHOLTY-SCALZO for help, leaving 15 messages

through the CWS switchboard, 21 messages to SHOLTY-SCALZO's CWS extension, and

several emails asking for help over a period of time of approximately three weeks. SHOLTY-SCALZO did not return TRISH's calls for help, even though SHOLTY-SCALZO had previously stated in person to TRISH that CWS would get TRISH a motel room and other relocation help. It was at this time that SHOLTY-SCALZO, BERGLUND, POQUETTE, BALLARD, ANGELONE, and/or BRADFORD acted independently and in concert to create and promote a narrative, which would be repeated in filings throughout the case and orally in court, but was biased, falsely stated, unlawful, and devoid of evidence. In fact, SHOLTY-SCALZO, MILLER, BALLARD, ANGELONE, and/or BRADFORD "asked Patricia to notify a [social worker] if she had plans to allow Stanley back in the home because it would be helpful to have a CFTM to establish expectations and safety networks for the family," all the while watching domestic violence reports through "EAGLE" Trinity County Sheriff's database, these individuals had actual knowledge the family needed help and ignored TRISH's attempts to contact SHOLTY-SCALZO.

35.    TRISH and STAN did not receive assistance in developing a safety plan, STAN was offered no services to help him as an alcoholic, TRISH was treated as the perpetrator, even though SHOLTY-SCALZO, BERGLUND, BALLARD, BRADFORD and/or ANGELONE knew she had been a victim of domestic violence and sexual abuse at a young age. The California Family Violence Protocol (San Diego County) which is based on Federal Standards states

> "The preferred way to protect children in most FV cases is to assist the adult survivor to develop a child/family safety plan. The goal is never to penalize the adult survivor by separating them from their child(ren),… [w]hen FV has been identified and the child's safety can be assured, the relationship between the survivor and the child should be supported and preserved. The aggressor of FV

must be held accountable and engaged in discussion and planning around the impact of how perpetrating FV may have deprived the child/youth of a healthy, safe, supportive environment and their basic needs being met. In order to do so child/family safety planning, FV advocates, and FV treatment programs are necessary."[2]

SHOLTY-SCALZO, MILLER, BALLARD, ANGELONE, and/or BRADFORD ignored protocol and instead perpetrated a lie that TRISH did not understand the nature of her actions, had not learned from her past mistakes, which were fourteen years prior, and that there was no hope for her with this child.

36.    SHOLTY-SCALZO, BALLARD, ANGELONE and/or BRADFORD used the narrative of domestic violence to gain jurisdiction stating, "despite the mother being able to articulate a safe plan of leaving to Oregon should an argument ensue, she failed, on numerous occasions, to enact this plan" when in fact TRISH repeatedly reached out and was ignored by SHOLTY-SCALZO, BALLARD, ANGELONE and/or BRADFORD.

37.    Three weeks prior to A.M.'s removal SHOLTY-SCALZO visited the home over concerns about TRISH's father, Lonnie Smith, being in the home after receiving a referral about a sexual offender living in the home. TRISH explained to SHOLTY-SCALZO Detective Ward had approved the placement and asked that SHOLTY-SCALZO speak with Detective Ward to get clarity on whether or not TRISH needed to remove grandfather from the home.[3]

38.    Three weeks prior to A.M.'s removal TRISH attempted to get a Restraining Order on STAN from Human Response Network in Weaverville, CA and was told by staff that she

_____

[2] *Child Welfare Services Policy Manual, San Diego County California Family Violence Protocol, Revised 12/18/2020*, County of San Diego, 1-36, 4

[3] Trish had also contacted Smith's victim, her half-sister who told Trish that her and her father had reconciled and she allows Smith in her life and in her home and most importantly around her children.

PATRICIA A. E. MIROTH, STANLEY R. MIROTH V. COUNTY OF TRINITY ET. AL. - 14

could not get one. TRISH communicated this to SHOLTY-SCALZO, BALLARD, ANGELONE and/or BRADFORD and was ignored.

39.    On or about May 5, 2018, SHOLTY-SCALZO submitted an Application and Declaration In Support of Protective Custody Warrant form, developed and implemented for use by COUNTY, in situations where a social worker seeks an ex-parte issuance of a protective custody warrant allowing the social worker to remove the child[ren] from their parent or primary caretaker. The document itself is a form used in the general practice of social workers in the COUNTY when seeking protective custody pursuance to W&IC 340. Said document contains only the ultimate "representations as fact" which must be shown in order to obtain a custody warrant pursuant to said statute, and as such, is an indicia if not example of deliberate indifference by the COUNTY to the rights and safety of parents and children, inclusive of plaintiff herein. California Family Violence Protocol states that only when

> "there is consistent evidence that FV is so pervasive that it has profoundly affected the child's ability to function, [t]he SW will follow policies outlined in ER - Authority to Take Custody of Child and Protective Custody Warrants ... additional considerations for determining if a safety threat exists: [a]ll services provided to protect the survivor and child were ignored by the abuser (or were unsuccessful in changing the abusive behavior) and/or were refused by the survivor; [t]here are no reasonable means to protect the child and/or prevent the abuser from continuing the abusive behavior towards the survivor, resulting in the child being at ongoing risk; [e]ducate the survivor about the option of a Restraining Order."[4]

TRISH sought out help with a RO (in April 2018) and sought out help from CWS workers SHOLTY-SCALZO, BALLARD, ANGELONE and/or BRADFORD and she was not provided a

---

[4] *Child Welfare Services Policy Manual, San Diego County California Family Violence Protocol, Revised 12/18/2020*, County of San Diego, 1-36, 4.

PATRICIA A. E. MIROTH, STANLEY R. MIROTH V. COUNTY OF TRINITY ET. AL. - 15

hotel, or vouchers, and other support that SHOLTY-SCALZO had promised her. Further there was no proof that A.M.'s ability to function was impacted. The six incidents, as described in police reports, these mostly took place in the night. Two were reports regarding only statements made by STAN or TRISH, one was battery on Lonnie Smith that included an incident with TRISH (where Aylaa was in her bedroom with headphones on), one was an interview of STAN while he was in jail regarding Lonnie Smith, and the last two took place at night while A.M. was asleep. There was no other evidence that A.M. was present other than a statement made by A.M. that her parents were acting bad.

40. On or about May 5, 2018, SHOLTY-SCALZO, BALLARD, ANGELONE and/or BRADFORD attached and incorporated as supporting documentation to the Application and Declaration In Support of Protective Custody Warrant a Petition which contained sworn allegations about A.M. and her parents. The Warrant Petition was signed by ANGELONE and/or BRADFORD under penalty of perjury. ANGELONE and/or BRADFORD had no personal knowledge of a single fact alleged in the petition that he/she signed under penalty of perjury. ANGELONE and/or BRADFORD made no representation in the Warrant Petition as to the basis of any personal knowledge he/she might have as to the allegations contained therein, nor was any representation made as the foundational basis for any of the allegations contained therein.

41. TRISH and STAN allege that ANGELONE and/or BRADFORD's signature(s) on said Warrant Petition under penalty of perjury was an implicit representation that he/she in fact had personal knowledge of the factual allegations presented in the Warrant Petition, but had done no investigation of any kind whatsoever in the matter, and had no knowledge of the facts he/she

alleged in the Warrant Petition, under oath, thus constituting fraud, or misrepresentation to the court.

42.     At no time did SHOLTY-SCALZO, BALLARD, and/or BRADFORD reasonably consider, implement, or attempt, any aspect of the "reasonable efforts" required by California Law and/or regulations regarding social work, which require that a social worker make reasonable efforts to continue a child in the home of his/her parent(s) as the least damaging alternative to service intervention. (W&IC section 309(a)(e)). Absolutely no alternatives were considered, and no reasonable efforts were made by SHOLTY-SCALZO, BALLARD, and/or BRADFORD to maintain A.M. in her home with TRISH and/or STAN, instead a conscious effort was made to perpetrate a false narrative and deceive the court and obtain a protective custody warrant.[5]

43.     Further SHOLTY-SCALZO, BALLARD, and/or BRADFORD obtained a Protective Custody Warrant based on a false declaration that failed to meet the substantial danger and no reasonable means to protect the child (W&IC 340 (b)(2-3)) because no pre-placement assistance had been provided where it was a failure of COUNTY policy to not provide pre-placement services to TRISH and/or STAN that would have negated the removal of A.M.  At that time BERGLUND entered the home on May 5, 2018, BERGLUND should have told TRISH that she had a choice, to leave the home with A.M. or tell STAN and Lonnie to immediately move out of the residence or have A.M. removed from her. SHOLTY-SCALZO, BALLARD, BRADFORD and/or BERGLUND are required by law to do everything possible to keep A.M. in the home, and failed to do so.

---

[5] This is even when CWS state that they were watching the home for several months and monitoring police reports.

PATRICIA  A. E. MIROTH, STANLEY R. MIROTH V. COUNTY OF TRINITY ET. AL. - 17

44.    Instead, on or about May 5, 2018, BERGLUND came to TRISH's home. TRISH was alone in the home with A.M. at that time. BERGLUND told TRISH she was removing A.M. and subsequently left with A.M. after spending only minutes in the home.

45.    BERGLUND, SHOLTY-SCALZO, BRADFORD, and/or ANGELONE failed to implement Child and Family Team Meetings ("CFTMs") process prior to removing A.M., offer Domestic Violence services which would have provided a way for TRISH to leave the home, gave TRISH the choice in whether she wanted to live with STAN and Lonnie or have A.M. removed, and failed to attempt to maintain the child with TRISH through the provision of any other services. (W&IC section 309(a)(e); see *Taking Children into Temporary Custody* 0070-548.20, L.A County Child Welfare Service Policies). When in fact, CWS had known grandfather, Lonnie, lived in the home and knew some sort of alleged domestic issues were happening for weeks if not months as evidenced by SHOLTY-SCALZO's home visits in the weeks prior to A.M.'s removal.  SHOLTY-SCALZO, BRADFORD, and/or ANGELONE failed to provide referrals to local FV programs, safety planning, counseling services, and/or confidential health screenings to the parents and child.[6]  Trinity County in their Trinity County System Improvement Plan, state, "[r]eunification with the family of origin is always the first consideration,"[7] but failed to put this into practice when they failed to provide pre-placement

_____

[6] *Child Welfare Services Policy Manual, San Diego County California Family Violence Protocol, Revised 12/18/2020*, County of San Diego, 1-36, 4; "As part of the 2013-2018 Trinity County System Improvement Plan, Trinity County focused on prevention programs and services. …as well as continued Child and Family Team Meetings and a teamed approach for case planning early and often will enhance Trinity County Child Welfare's ability to approach reports of suspected abuse or neglect and help mitigate safety concerns and subsequent maltreatment. Prevention efforts, Child and Family Team Meetings, case planning, and safety planning are strategies designed to support a family and help them access resources to stabilize,…" *California - Child Family Services Review, Trinity County System Improvement Plan 2018-2023*, The County of Trinity, 1-51, 8-9.

[7] *California - Child Family Services Review, Trinity County System Improvement Plan 2018-2023*, The County of Trinity, 1-51, 9.

PATRICIA  A. E. MIROTH, STANLEY R. MIROTH V. COUNTY OF TRINITY ET. AL. - 18

services, and did not give TRISH a choice to have A.M. remain in the home by the voluntary/involuntary removal of STAN and Lonnie.

46.    On or about May 5, 2018, immediately after A.M.'s removal, TRISH told both Father, STAN, and grandfather, Lonnie Smith, to leave the home. To date, TRISH has not spoken again to Lonnie Smith. STAN returned to the home over a year later having successfully completed an AA program and has abstained from alcohol use to date. This is in direct conflict to SHOLTY-SCALZO, BALLARD, BRADFORD and/or ANGELONE's narrative that TRISH did not understand the nature of her harm and that she was incapable of remediating her situation, which was repeated with malicious intent and as fraud upon the court in a variety of ways throughout the pendency of the case.

47.    On or about on May 5, 2018,  DOE 1, SHOLTY-SCLAZO, BRADFORD, BALLARD and/or ANGELONE failed to give preferential consideration to the request of relatives as required under Welfare and Institutions Code 361.3(a). Carol Lindman and Isaac Miroth who knew and had bonded relationship with A.M. and were ready, willing, and able to take A.M. into their home or relocate to do so. Carol Lindman and Isaac Miroth were never contacted even though TRISH asked SHOLTY, SCLAZO, BRADFORD, BALLARD and/or ANGELONE to do so.

48.    On or about on May 7, 2018, SHOLTY-SCLAZO, BALLARD, ANGELONE and/or BRADFORD made the decision to give TRISH only supervised visits with A.M. even though the people who were at issue in the matter were no longer in the home and A.M. could have been safety returned home with supporting services to ensure offenders remained out of the home. "Child abuse investigator[s] [have] the duty to investigate information that would have clarified

matters prior to separating children from their parents." (*Wallis v. Spencer,* (2000) 202 F.3d 1126,1138, citing *Sevigny v. Dicksey* (4th Cir. 1988) 846 F2d 953, 957.)

49.     On or about on May 7, 2018, SHOLTY-SCLAZO, BALLARD, ANGELONE and/ or BRADFORD failed to provide alcohol assessment and treatment options and testing to STAN who was suffering from alcohol abuse.

50.     On or about May 9, 2018, SHOLTY-SCLAZO, BALLARD, BRADFORD and/or ANGELONE files a Detention Report falsely reporting a narrative that is echoed again and again in court documents but not based on truth. Specifically that parents were offered pre-placement services that were not effective, and that parental rights were terminated as to five other children "due to Mother's failure to provide adequate supervision and medical care, and her abuse of methamphetamine." TRISH as stated herewith asked SHOLTY-SCLAZO, BALLARD, BRADFORD, and/or ANGELONE for services evidenced by her cell phone call log and by emails and was refused. TRISH gave four of her children up voluntarily as a very young mother (15-21 years of age), and one was removed from TRISH and STAN, who allege the removal was by unlawful means, all fourteen plus years prior. TRISH has never used methamphetamines. Federal standards for determining abuse based on past acts looks at the previous 12 month time period not 14 plus years prior. The measure is described as "of all who were victims of substantiated or indicated maltreatment report during a 12-month reporting period, what percent were victims of another substantiated or indicated maltreatment report within 12 months of their

initial report?"[8]  SHOLTY-SCLAZO, BALLARD, ANGELONE and/or BRADFORD and DOES 1-20 used Welfare and Institutions Code section 300(j) where, "[t]he child's sibling has been abused or neglected …. and there is a substantial risk that the child will be abused or neglected…." Fourteen plus years prior is not what this statute meant.

51.     On or about May 9, 2018, at A.M.'s detention hearing, the petition written and signed under penalty of perjury, by SHOLTY-SCLAZO, BALLARD, ANGELONE and/or BRADFORD and DOES 1-20, failed to allege facts showing risk to A.M. at the time of the hearing. At the time of the hearing, both perpetrators STAN and grandfather no longer lived in the home. SHOLTY-SCLAZO, BALLARD, ANGELONE and/or BRADFORD through misrepresentation and perjury on the court fabricated the story that TRISH was not able to keep herself from having contact with the perpetrators, that she had done this prior and was at fault for that instance as their proof, but knowingly failed to interview TRISH on this matter and/or to describe that TRISH had not known her prior husband, Chris Anderson, was a perpetrator and that at the time he was arrested for molestation, TRISH immediately left him and filed for divorce, and never reengaged with him, and there had never been proof that TRISH used methamphetamines. In fact, CARTER, TRISH's mother-in-law has falsely reported to CWS and to other members of TRISH's and Debbie's church that TRISH used methamphetamines which is described in signed and notarized declarations by STAN on October 15, 2019, and Debbie Duke

---

[8] Child Welfare Capacity Building Collaborative, Child and Family Services Review, U.S. Government, *CFSR Round 3 Statewide Data Indicator Series*, https://capacity.childwelfare.gov/states/resources/cfsr-round-3-statewide-data-indicator-series-maltreatment-in-foster-care, last accessed on February 26, 2022; Child Welfare Capacity Building Collaborative, Child and Family Services Review, U.S. Government, *CFSR Round 3 Statewide Data Indicator Series*, https://www.acf.hhs.gov/sites/default/files/documents/cb/cfsr-r3-statewide-data-workbook.pdf, last accessed on February 26, 2022.

and Sharron Joines, long time members of CARTER's church, on January 17, 2020 and whom were able to testify competently to this in 2018.

52.    SHOLTY-SCLAZO, BALLARD, BRADFORD and/or ANGELONE did not make reasonable efforts to develop a safety plan to keep A.M. and then S.M. with TRISH and/or STAN. SHOLTY-SCLAZO, BALLARD, BRADFORD and/or ANGELONE did not make a permanency plan with the first priority reunification with TRISH and/or STAN but advocated to the Court to forego reunification services for TRISH and STAN in violation of their due process rights (See W&IC 16501.1). SHOLTY-SCLAZO, BALLARD, BRADFORD and/or ANGELONE falsely stated in court that TRISH and STAN made no progress toward remedying the circumstances that led to removal even though TRISH was no longer living with STAN or Lonnie, TRISH attended weekly counseling, and had a county mental health assessment. When evaluating family progress, caseworkers must focus on the level of maltreatment risk and whether safety of the child has been achieved, changes in the behaviors and conditions that led to the need for intervention (i.e. reduction of risk factors and promotion of protective factors and caregiver protective capacities), level of achievement of goals and tasks in the family plan and the reduction of the effects of maltreatment on the child and other family members. SHOLTY-SCLAZO, BALLARD, BRADFORD and/or ANGELONE made no reasonable efforts to reunify the children with TRISH and/or STAN and failed to develop a formal assessment of current safety and levels of risk, including significant changes to the family situation that enhanced protective factors and decreased the risk of maltreatment.[9] A.M. was never put into counseling

---

[9] *Child Protective Services: A guide for Caseworkers* (2018) Child Abuse and Neglect Manual Series, U. S. Department of Health and Human Services; Office on Child Abuse and Neglect, 1-249, 132-134.

another sign that SHOLTY-SCLAZO, BALLARD, BRADFORD and/or ANGELONE did not believe that the child was harmed.

53.     SHOLTY-SCLAZO, BALLARD, BRADFORD and/or ANGELONE failed in the May 24, 2018 jurisdiction report, to provide exculpatory evidence in its due weight in that a Trinity County Sheriff approved the placement of Lonnie Smith with TRISH in 2017. SHOLTY-SCLAZO, BALLARD, BRADFORD and/or ANGELONE state "[the] parents' complete lack of rationale, concern for safety, or outright logic is baffling…..The fact that neither parent found any issues with this demonstrates that they do not have the fundamental ability to protect A.M., as not allowing your child to be unsupervised with a convicted child molester should be painfully obvious." SHOLTY-SCLAZO, BALLARD, BRADFORD and/or ANGELONE did not obtain the placement approval by Detective Ward. Further, shouldn't SHOLTY-SCLAZO, BALLARD, BRADFORD and/or ANGELONE understood that it should have been "painfully obvious" to Detective Ward that Lonnie Smith should not be in a home with a child. Instead, detective Ward signed off on the placement giving TRISH a false sense of security through Ward's approval.

54.     TRISH's court appointed attorney, Verlin Johnson, now deceased, did not advocate for TRISH's interests. Johnson who seemed to be an alcoholic, passed due to liver cancer and having at least one DUI in 2020 was ineffective in his counsel. Johnson never provided the court with TRISH's evidence of her negative drug tests dating back to 2001, or even attempted to defeat the false allegation of TRISH's alleged methamphetamine use used repeatedly by CWS in court, showing that she has no arrests or convictions due to possession of any controlled substances, use/under the influence of a controlled substance, or DUIs. Johnson never provided TRISH's counseling reports, parenting classes, or domestic violence victim class

documentation, nor demanded that the COUNTY should be making collateral contact with aforesaid individuals/agencies, or called witnesses who could provide an alibi for TRISH regarding CWS's stalking accusations. Johnson himself did not describe TRISH's process in counseling by communicating with TRISH's counselor Jill Chipman, or Angel Norton at the Human Response Network in Weaverville where TRISH took her parenting and DV victim classes. JOHNSON by his omissions perpetuated SHOLTY-SCLAZO, BALLARD, BRADFORD and/or ANGELONE's false narrative, as a knowing omission and as such was ineffective in his counsel.

55.     SHOLTY-SCLAZO, BALLARD, BRADFORD and/or ANGELONE individually and in concert with one another developed a permanency plan that included the termination of parental rights of TRISH and STAN when there was no evidence that A.M. and S.M. could not be safely reunited with TRISH. SHOLTY-SCLAZO, BALLARD, BRADFORD and/or ANGELONE purposefully withheld evidence and fabricated lies to uphold the narrative that TRISH was an unfit mother. SHOLTY-SCLAZO, BALLARD, BRADFORD and/or ANGELONE fabricated a false narrative and used it to deny Child and Family Team Meetings, safety planning to keep the children in the home, which these meetings and strategies are meant to help TRISH and STAN access resources to stabilize, the preferable course per CWS policy and regulation. SHOLTY-SCLAZO, MILLER, BALLARD, BRADFORD and/or ANGELONE did not ensure an assessment was completed for TRISH and STAN to help identify treatment options and service needs.  For example, STAN was not assessed for substance use and recommended to receive any services for his alcohol abuse. SHOLTY-SCLAZO, BALLARD, BRADFORD and/or ANGELONE did not identify or develop a support network, or a

behaviorally based case plan. Further, TRISH was stigmatized; she was treated as if she did not

understand the nature of the harm, even though she had Lonnie and STAN move out and was

attending counseling weekly.

56.     SHOLTY-SCLAZO, BALLARD, BRADFORD and/or ANGELONE did not

contact any family other than paternal grandmother, CARTER, for placement of A.M. CARTER

was not a friend to TRISH, in fact CARTER had been making false allegations regarding

TRISH's inability to parent and use of methamphetamines to CWS for years and BALLARD,

BRADFORD, and ANGELONE knew these allegations existed against TRISH, refused to test

TRISH for drug use, and knowingly used these false allegations against TRISH repeatedly for

the duration of her case.  Further SHOLTY-SCLAZO, BALLARD, BRADFORD, and

ANGELONE failed to correct CARTER in her use of making false CWS reports even though

they had received multiple reports by her that were unfounded. SHOLTY-SCLAZO, BALLARD,

BRADFORD, and ANGELONE allowed CARTER's false allegations as a basis to remove both

A.M. and S.M.

57.     SHOLTY-SCLAZO, BALLARD, BRADFORD, and/or ANGELONE did not

consider permanency placement for A.M. at the time of her removal with relatives, adult son

Isaac Miroth or TRISH's sister, Carol Lindman, or include Isaac or Carol in the familial support

network, in Child and Family Team meetings and again when CARTER put A.M. back into the

foster system, or with the removal of S.M. Welfare and Institutions Code Section 361.3 requires

agencies to consider and place foster children with relatives whenever possible, and SHOLTY-

SCLAZO, BALLARD, BRADFORD, and/or ANGELONE failed to ask for or notify Isaac or

Carol when the children were removed nor returned calls from Isaac and Carol. The COUNTY has long failed to establish life-long connections and placements with relatives.[10]

58.     On or about May 30, 2018, TRISH enrolls in counseling with Jill Chipman on her own accord. TRISH still attends counseling with Ms. Chipman to date. Ms. Chipman was present with BALLARD, BRADFORD, and/or ANGELONE at the one and only Family Team Meeting after S.M. was removed advocating for TRISH.  Ms. Chipman wrote letters on July 18, 2018, March 10, 2019, April 4, 2019, and October 9, 2019 detailing her treatment with TRISH, TRISH's process, and her concerns about CWS's actions.

59.     On March 10, 2019, Ms.Chipman in her six page letter to the Trinity County Judge writes TRISH has "made great gains in her own personal insight" and in reference to STAN and Lonnie Smith "[w]ithin 48 hours, Patricia removed both her husband and her step-father from the home. It was obviously a poor decision to have this person in their home given his past history, and Patricia now sees this and acknowledges it." In addition Ms. Chipman writes more, insisting that,

> "[w]ith no offer of services, help, or guidance…[has] shown incredible effort, and maintained residence and transportation" and  "[I]n the detention report dated 5-9-18 it states that CPS made reasonable efforts to not detain Aylaa, and that included interviewing the parties, reviewing prior records services that were given by another county 17 years prior. That seems like less than reasonable effort."

---

[10] *California - Child and Family Services Review: Trinity County System Improvement Plan 2018-2023*, California Department of Social Services 1-51 p. 13, revised 06/19/2020, where "[d]uring the County Self-Assessment process, Trinity County reviewed systemic factors which affect the County's ability to meet the federal measures described above (S2, P1, and P2). The systemic factors which have the most effect on the recurrence of maltreatment and permanency within 12 or 24 months include resource family home availability in Trinity County and establishing life-long connections and placements with relatives (which are components of CFSR Systemic Factor: *Foster and Adoptive Parenting Licensing, Recruitment, and Retention)."*

The detention report set forth by SHOLTY-SCLAZO, BALLARD, BRADFORD, and/or

ANGELONE states that services that might prevent the need for further detention, or that could

facilitate the return of the child were: Mental Health Assessment, and/or treatment, Domestic

Violence services, parenting education, visitation. TRISH had engaged in and successfully

accomplished each of these. In the same letter, Ms. Chipman details a conversation she had with

Dr. McKellar who conducted the bonding assessment. Ms. Chipman was "shocked" when she

read his conclusion that never seeing TRISH again would not have a detrimental affect on A.M.,

because Dr. McKellar had contacted her to make sure his observations could be backed up by

Ms. Chipman's experiences where at that time both individuals felt quite strongly that Trish and

A.M. were a bonded pair. Ms. Chipman could only conclude that SHOLTY-SCLAZO,

BALLARD, BRADFORD, and/or ANGELONE, and/or the reports he took under submission

changed his mind about what he had personally experienced. SHOLTY-SCLAZO, BALLARD,

BRADFORD, ANGELONE, and/or CARTER wove an unfounded, malicious, and untrue

fabrication of TRISH and perpetrated this fabrication to the court, to Dr. McKeller, and to any

other individual who became involved in the case.

     60.     TRISH over and over supplied records of her progress to SHOLTY-SCALZO,

BALLARD, BRADFORD, and/or ANGELONE. SHOLTY-SCALZO, BALLARD,

BRADFORD, and/or ANGELONE did not consider or use the COUNTY definition of "no

progress" in making their recommendation, when in fact that box should never have been

checked.

     61.     On or about June 1, 2018,  TRISH asks BALLARD for a home visit and asks if

CWS will remove her unborn son. BALLARD visits the home and see no issues. It was at that

time she told TRISH that she would not get A.M. back and to let it go, this was prior to TRISH even receiving the Jurisdiction report or having a Disposition hearing on the matter. SHOLTY-SCALZO, BALLARD, BRADFORD, and/or ANGELONE planned for the termination of parental rights for TRISH and STAN, with the that path including the denial of reunification services. This is in direct opposition to the purpose of CWS to keep families together.

62.    On or about on June 1, 2018, BALLARD told TRISH at this time that there was no reason for them to take her unborn son.

63.    On or about June 1, 2018, TRISH asks BALLARD and ANGELONE to drug test her, they refuse. TRISH's drug test at St. Joseph's Hospital, Eureka CA on August 18, 2018 when she gave birth to S.M. was negative. TRISH gives proof of her negative drug test to the CWS front desk and TRISH also reaches out in an email to BALLARD asking her if she received the drug test and never hears back from her.  BALLARD, ANGELONE and/or BRADFORD allow TRISH to breastfeed and provide breastmilk for S.M. while using false allegations of drug use in Court to keep the children from reunifying with TRISH. On May 13, 2019, ANGELONE gives TRISH a written letter denying her a drug test.

64.    On August 3, 2018, A.M. was placed with paternal grandparent, CARTER, who has made several calls into CWS alleging falsely that TRISH is a drug user in both this case and TRISH and STAN's prior case with C.M., their first child. At the time of TRISH's appeal of the termination of parental rights the appeals court relies on the expectation that A.M. was going to be adopted by the grandmother. CARTER put A.M. back into the foster system by February 18, 2020 while the appeal decision was being made. BALLARD, ANGELONE and/or BRADFORD

again failed to consider familial placement at this time with Carol Lindman or Isaac Miroth both of whom were perfectly capable and wanting to care for A.M.

65.    On or about August 3, 2018 TRISH's visits with A.M. were decreased from twice weekly to once a month because A.M. was moved out of COUNTY to be placed with her paternal grandmother, CARTER.  TRISH had attended all of per previous visits and was asking for more. TRISH was willing to drive or to take a two day greyhound so that she could be with her child, BALLARD, ANGELONE and/or BRADFORD decreased the visits out of malicious intent to deprive TRISH of her motherhood.

66.    On August 18, 2018, TRISH gave birth to S.M.

67.    On or about August 22, 2018, DOE-2 handed TRISH a protective custody warrant and told TRISH they were taking S.M. into custody. DOE 2, BALLARD, BRADFORD, and/or ANGELONE had obtained a Protective Custody Warrant knowing they did not have probable cause to remove S.M. and made false declarations that failed to meet the substantial danger and no reasonable means to protect the child (W&IC 340 (b)(2-3)) or that there was any exigent circumstance justifying S.M.'s removal, (W&IC 306(2)).

68.    S.M.was taken into custody under Welfare and Institutions code section 300(j). There was no nexus between the allegations pertaining to S.M. and the risk to A.M. DOE 2, BALLARD, POQUETTE, BRADFORD, and/or ANGELONE failed to properly document a nexus between the allegations and the risk to A.M., i.e. the gender differences, and how the opposite gender would be at risk of sexual abuse. BALLARD, POQUETTE, BRADFORD, and/or ANGELONE fabricated that S.M, like his sister A.M., was in substantial danger and at a risk that he would suffer emotional damage and that there was no reasonable means to protect him.

PATRICIA  A. E. MIROTH, STANLEY R. MIROTH V. COUNTY OF TRINITY ET. AL. - 29

However, the actual circumstances at that time where vastly different than those at the time of A.M.'s removal. The alleged perpetrators had withdrawn from the home almost four months prior. TRISH had a safe home, and was engaging in mental health assessment(s) and counseling in order to gain back custody of A.M. In addition, there were no police reports during the time between A.M.'s removal and S.M.'s removal. DOE 2, BALLARD, POQUETTE, BRADFORD and/or ANGELONE also failed to consider before taking S.M. into custody if there were any reasonable services available which could eliminate the need to remove the child as required under Welfare and Institutions Code section 340(b)(c), such as interviewing TRISH and others such as Jill Chipman TRISH's counselor, make home safety checks, and require classes or mental heath examinations.

69.    Instead, DOE-2, BALLARD, POQUETTE, BRADFORD and/or ANGELONE obtained a protective custody warrant based on the same allegations as A.M., and were declared as such under penalty of perjury. DOE-2, BALLARD, POQUETTE, BRADFORD and/or ANGELONE made the decision to place S.M. under the existing referral and chose to not evaluate S.M. under the current circumstances which were not the same as the circumstances under which A.M. was removed in violation of County policy.

70.    No probable cause existed to believe this was true even though SHOLTY-SCALZO, BALLARD, POQUETTE, BRADFORD and/or ANGELONE stated they believed TRISH could not stick to her word, TRISH was living proof that she had indeed exceeded their expectations. SHOLTY-SCALZO, BALLARD, POQUETTE, BRADFORD and/or ANGELONE targeted TRISH because TRISH was speaking out against the CWS decisions. SHOLTY-SCALZO, BALLARD, POQUETTE, BRADFORD and/or ANGELONE were not noting with

the court the progress she was making in A.M.'s case but framing her as an unreliable drug user that refused to protect her children against danger. TRISH was treated as a perpetrator herself instead of receiving empathy per guidelines and practices of how to interact with victims in the state CWS guidebook.

71.    DOE-2, POQUETTE, BALLARD, BRADFORD and/or ANGELONE did not include any exculpatory evidence in S.M.'s Warrant Petition which might have in any way contradicted their position that S.M. needed to be immediately removed from the care, custody, and control of his parent, TRISH. Further DOE-2 and POQUETTE had no actual knowledge of TRISH and STAN's case.

72.    BALLARD, POQUETTE, BRADFORD and/or ANGELONE were required by Welfare and Institutions Code Sections 306 and/or 309 to do an immediate and independent investigation into the return of S.M. to his home. At no time did BALLARD, POQUETTE, BRADFORD and/or ANGELONE conduct an independent, unbiased, and objective investigation into returning S.M. to TRISH or STAN, in violation of California law, Division 31 Regulations, and the policies of the COUNTY.

73.    In the alternative, TRISH and STAN allege that SHOLTY-SCALZO, POQUETTE, BALLARD, BRADFORD and/or ANGELONE's failing to conduct an independent, unbiased, and objective investigation into the case generally, and placement of A.M. and S.M. specifically, perjured themselves during trial, misrepresenting facts and circumstances both before and during trial, and failing or refusing to disclose exculpatory evidence, which are all aspects of conduct consonant with the policies, practices, and procedures of the COUNTY, whether written or unwritten.

74.     BALLARD, POQUETTE, BRADFORD and/or ANGELONE also refused to interview family placement for S.M. with Carol Lindman or Isaac Miroth both of whom were perfectly capable and willing to care for S.M. and A.M. while TRISH and STAN proceeded through the juvenile court proceedings. A.M. was emotionally bonded to Carol and Isaac, and had only met CARTER one time thus it was clearly in the best interests of A.M. to be placed with Carol or Isaac yet BALLARD, POQUETTE, BRADFORD and/or ANGELONE never returned their calls/emails.

75.     Upon S.M.'s removal he was placed in foster care with individuals who were ready and eager to adopt.

76.     On August 24, 2018, POQUETTE stated in the Juvenile Dependency Petition under penalty of perjury, that S.M. was at risk of abuse due to the sustained allegations as to his sibling A.M., under W&IC 300(j).  Plaintiffs allege that POQUETTE's signature on said Petition was an implicit representation that she had personal knowledge of the factual allegations presented. In reality, POQUETTE had no personal contact with TRISH, failed to conduct an investigation of any kind, nor had personal knowledge of the factual allegations she claimed in the petition. POQUETTE, however signed the Petition under penally of perjury constituting fraud and perjury upon the court.

77.     On or about August 27, 2018, POQUETTE stated in the Detention Report under penalty of perjury, that TRISH among other things was provided with reasonable efforts to prevent or eliminate the need for removal from the home and that there was no available services to prevent the need for further detention. POQUETTE, by signing the report represented that her facts were true. POQUETTE had never interviewed TRISH, nor had conducted any

investigation. POQUETTE signed the detention report with no personal knowledge and in doing so constituted fraud upon the court.

78.     On or about October, 2018, TRISH, on her own accord, enrolls in a domestic violence victim's program at Human Response Network. TRISH supplies the record of her progress to SHOLTY, SCALZO, BALLARD, BRADFORD, and/or ANGELONE.

79.     On or about November, 2018, TRISH enrolls in an online parenting classes. TRISH completes parenting "Newborn to 5" and "6-12" and supplies the record of her progress to SHOLTY-SCALZO, BALLARD, BRADFORD, and/or ANGELONE.

80.     On or about November 2018, at the six-month review hearing, SHOLTY-SCALZO, BALLARD, BRADFORD, and/or ANGELONE, failed to provide exculpatory evidence as to TRISH. Evidence that TRISH did not create a substantial risk of detriment to the children, including that at this time TRISH had attended a Domestic Violence Group Therapy for three sessions, and at least one additional counseling session both through Human Response Network in addition to her weekly counseling sessions with Jill Chipman since June 2018. At this time TRISH also enrolled in or had completed Priceless Parenting Class - Ages 5 and Under (11/20/2018). and was planning on and did complete Priceless Parenting Class - Ages 6 to 12 (02/03/2019).

81.     On or about November 2018, at the six-month review hearing, POQUETTE, BALLARD, BRADFORD and/or ANGELONE  failed to present more than a one-sided story that mother has minimized her situation and was repeating past acts with no understanding of her role. These past acts were between fourteen and twenty-one years prior. Twenty-one years prior years prior TRISH was a kid herself at fifteen years of age. The past acts POQUETTE,

BALLARD, BRADFORD and/or ANGELONE referred to were 1. TRISH's use of

methamphetamines; 2. Prior living with a sexual offender resulting in failure to protect her child;

3. TRISH's inability to care for her children, all false. First, TRISH has never used drugs as

shown by her medical documentation which reaches back to 2001, second when father of her

child Brian Anderson, Christopher Anderson, on or about 2001-2002 was arrested for

molestation TRISH immediately left and divorced him. In fact, TRISH showed she could be

protective. Finally, for the majority of A.M.'s life (i.e. until A.M. was five), CWS was not

involved and there were no issues in her ability to care for A.M.

82.    In November 2018, POQUETTE, BALLARD, BRADFORD and/or ANGELONE

made a plan to decrease the monthly supervised visit with S.M. "in the best interests of the

child." TRISH was breastfeeding and delivering milk to the foster placement. There was no

actual reason to decrease visits with S.M., not at his removal and not in November. BALLARD,

BRADFORD and/or ANGELONE notes state that a baby will only breastfeed once a month if a

bond is present, however, BALLARD, BRADFORD and/or ANGELONE continue to perpetrate

a false narrative about TRISH with a malicious intent to deprive her of her motherhood.

83.    TRISH is informed and believes, and thereon alleges that these fraudulent

statements, misrepresentations, and failure to keep S.M. and A.M. in the home and to include

exculpatory evidence, make safety plans, provide assistance in the form of Restraining orders,

housing, and services to help with addiction were acts of malicious and deplorable conduct done

with intent by defendants, and each of which singled out plaintiffs with intention to cause injury

to them, and with a willful and conscious disregard of the rights and safety of A.M., S.M.,

TRISH, and STAN, and their family unit.

84.    BALLARD, BRADFORD and/or ANGELONE because of some ill-perceived stigma perpetrated on TRISH, chose to continue to perpetuate the lie that TRISH used drugs, that she was unreliable, did not understand the nature of the harm she caused, and had no ability to understand it in the future. In CWS culture a resistant parent is the same as a parent that "does not understand the nature" of the harm they caused. TRISH was labeled a resistant parent and as such and contrary to her counselor, Jill Chipman's statements that TRISH did understand how she perpetrated certain situations and that she was learning how to handle these, BALLARD, BRADFORD and/or ANGELONE chose to ignore any outside input or exculpatory evidence.

85.    BALLARD, BRADFORD and/or ANGELONE refused to enforce TRISH's visitation plan with A.M., regarding her calls/videos with A.M., and despite TRISH calling and reporting this failure many times, BALLARD, BRADFORD and/or ANGELONE decreased the frequency of TRISH's visits. CARTER frequently missed calls for A.M. and TRISH or shortened the length of a call. BALLARD, BRADFORD and/or ANGELONE acted in collusion with CARTER, each of them, by not addressing this issue which impeded on TRISH'S visitation rights with A.M.

86.    On or about on November 1, 2018, TRISH is denied services based on the statement that "it would be detrimental for A.M. to wait though a dependency case, delaying the permanency she deserves, to see her mother fail for a sixth time" when TRISH was active in providing protective measures to her children, seeking counseling, taking classes, and open to drug testing and other mental health services.

87.    On or about August 2019, BALLARD and ANGELONE accuse TRISH of stalking BALLARD and S.M.'S foster care home. ANGELONE told TRISH while she was

holding S.M. in her arms that "if you don't stop stalking Allison, we are going to call the police and cancel your visits." BALLARD and ANGELONE accused TRISH without investigating the allegations, there was no evidence that TRISH had intervened or interfered with the foster home where S.M. was placed or had interfered or followed BALLARD. BALLARD and ANGELONE accused TRISH of stopping in her car across the street from the foster home where S.M. resided and that TRISH was following BALLARD in her car.  This allegations was unfounded, ridiculous, and done with the malicious intent to remove permanently any chance TRISH had to get her children back.

88.    The alleged stalking was used by BALLARD and ANGELONE in court multiple times against TRISH. Statements of persons acting under the color of law which are threatening in nature or used to intimidate or coerce an individual which interferes with that individual's constitutional rights and/or laws of the United States or of the states is a violation of the Tom Bane Civil Rights Act Cal. Civ. Code § 52.1.

89.    Friends, Crystal Willer and William Shepard were available to testify that TRISH was with them on the date she was accused of following BALLARD. BALLARD and ANGELONE failed to conduct a fair and unbiased investigation of the allegation. JOHNSON failed to rebut this allegation in court when he knew TRISH had witnesses willing and available to testify. BALLARD and ANGELONE knew or had reason to know that TRISH was not stalking.

90.    Since S.M.'s removal, TRISH had supervised visits. TRISH had not received reunification services for either children which made it extremely easy for BALLARD, BRADFORD and/or ANGELONE to ignore her efforts and decrease her visits while they

prepared for permanency in direct violation of the COUNTY and state policies and laws to keep children in their home. Even though TRISH appealed the results termination of her parental rights with in regards to A.M. and S.M., she lost the appeal (4/18/2020) as the appellate court record was replete with a false, one-sided, and a skewed version of the facts.

91.     Further in violation of duties and California laws, SHOLTY-SCLAZO, BERGLUND, POQUETTE, BALLARD, BRADFORD, and/or ANGELONE never provided TRISH or STAN with reports 48 hours prior to the hearing in violation of TRISH's due process rights. TRISH received them most often right before the hearing and sometimes she never received them, even though SHOLTY-SCLAZO, BERGLUND, POQUETTE, BALLARD, BRADFORD , and/or ANGELONE, signed under penalty of perjury that TRISH and STAN received them.

92.     On March 14, 2019 Attorney Johnson failed to call Dr. McKeller as a witness to rebut his assessment of the relationship between A.M. and TRISH nor provide Ms. Chipman as a witness, who had a prior conversation with Dr. McKeller, and could attest to TRISH's progress, or did Johnson provide evidence such as S.M.'s desire to breastfeed, or have a bonding assessment conducted for TRISH and S.M., this was a violation of the duty of loyalty and care that the County had the oversight and responsibility to assess and evaluate the quality of the services their employees were providing. Restatement of the Law Governing Lawyers § 16(3); Restatement §§ 16(2), 52.

93.     On March 20, 2019, Johnson wrote an email to TRISH in response to her question "I don't understand why we are filing for an (sic) appeal when they never get [overturned] Is this going to help me since they didn't give me services?" His email among other things states, "You

have a lot of work still to go on yourself. Don't get pregnant." These callous statements

constitute a breach of a lawyer's fiduciary duty to treat his client with the utmost candor,

rectitude, care, loyalty and good faith."  Restatement of the Law Governing Lawyers § 16(3);

*Burdett v. Miller*, 957 F.2d 1375 (7th Cir. 1992) (Posner, J.) Johnson's advocacy for TRISH was

not a consideration let alone a priority and COUNTY allowed these continuing breeches of his

fiduciary duties to go unchecked.

94.    On or about November 21, 2019, TRISH visited the Trinity County District

Attorney Office and sought help from an investigation for the removal of her children. Donna

Daly, Trinity County District Attorney files with the Trinity County Superior Court for "Request

for Disclosure of Juvenile Case File" citing "law enforcement is conducting a criminal

investigation into the removal and placement of the child in foster care," for both A.M. and S.M.

TRISH again meets with Donna Daily on or about May 14, 2020.

95.    On May 14, 2020, after the meeting with Donna Daily, Ms. Daily passed away in

a car accident. After this, the COUNTY was reached out to through over five emails and

telephone conversations with Matthew Mandolfo (Investigator) and David Brady (D.A.) who

mysteriously lost the investigation information.

96.    A.M. and S.M. were adopted out in October 2020.

97.    At all times mentioned, 42 U.S.C. Section 1983 provided in pertinent part as

follows:

> Every person who, under color of any statute, ordinance , regulation,
> custom, or usage of any State or Territory or the District of Columbia,
> subjects, or causes to  be subjected, any citizen of the United State or
> other person with the jurisdiction thereof to the deprivation of any rights,
> privileges or immunities secured by the Constitution and laws, shall be

PATRICIA  A. E. MIROTH, STANLEY R. MIROTH V. COUNTY OF TRINITY ET. AL. - 38

liable to the party injured in an action of law, suit in equity, or other proper proceeding for redress.

98.    The conduct of the defendants demonstrated deliberate indifference to Plaintiffs' First, Fourth and Fourteenth Amendment rights and shows a substantial departure from accepted professional judgement, practice, and standards as established in the California Welfare and Institutions Code, the California Penal Code, the California Department of Social Services Policy Manual, and the California Code of Regulations.

99.    In undertaking the conduct and making the omissions alleged above, Defendants, and each of them acted individually and/or on behalf of their respective employers or other co-conspirators, in conspiracy with each other, with a common intent and scheme to deprive Plaintiffs under the color of state law, of their rights as guaranteed to them by the United States Constitution and federal law, including without limitation 42 U.S.C. Section 671(a).

100.    As a result of the actions and inactions of the Defendants' aforesaid, Plaintiffs have suffered, and will continue to suffer into the future, the following damages:

- severe and enduring emotional distress and disruption to their psyche, to such as extent as to cause severe pain and suffering, a stroke, anger, frustration, loss of appetite, sleeplessness,  nausea, headaches, apathy, genial malaise, an enduring sense of mistrust of government officials, hyper vigilance, embarrassment, humiliation, and damage to Plaintiffs' reputation and standing in their community;

- medical expenses (on or about June 2018 TRISH has a TIA due to stress from her children's removal and the ensuing actions by defendants) and mental health counseling / therapy fees incurred in the past and certain to be incurred in the future;

- lost wages occurred in the past, and certain to be incurred in the future.

101.    In addition, the action of Defendants were malicious, shocking to the conscious of the reasonable person, oppressive, and malicious, and abhorrent, and as such, entitle Plaintiffs to an award of punitive damages in the amount to be proven at time of trial.

102.    As a direct result of these defendants' violation of the Plaintiffs' state and federal civil rights and 42 U.S.C. Section 1983, Plaintiffs have suffered, and will continue to suffer damages aforesaid as well as to incur attorney fees, costs, and expenses in the underlying case and in this matter, as authorized by 42 U.S.C. Section 1988 in an amount not yet ascertained, to be shown according to proof at trial.

## FIRST CAUSE OF ACTION

Violation of Rights to Familial Association - Removal of A.M.

(Plaintiffs against BERGLUND, SHOLTY-SCALZO, BALLARD, BRADFORD, ANGELONE)

103.    Plaintiffs reallege and incorporate paragraphs 1 through 99 above, as though fully set forth.

104.    Under the circumstances set forth hereinabove TRISH and STAN had the right to familial association with A.M. under the Fourth and Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. Section 1983 at the time of her detention. BERGLUND, SHOLTY-SCALZO, BALLARD, BRADFORD, ANGELONE, and unknown DOE defendants, removed A.M. from TRISH and STAN without providing pre-placement services to TRISH and STAN, maliciously ignoring TRISH's calls for help, and/or by not giving TRISH an ultimatum to whether she wanted STAN and Lonnie in the home or A.M. removed.

105.    TRISH and STAN allege that the removal of A.M. was caused by said defendants fraud and misrepresentations of said Plaintiffs, and without offering preplacement services to TRISH or STAN, maliciously ignoring TRISH's requests for their offered assistance in finding alternate housing, while watching the County's police reporting system, and for presenting fabricated evidence to the court at the detention and jurisdiction hearings as more fully set forth hereinabove and below. BERGLUND, SHOLTY-SCALZO, BALLARD, BRADFORD and/or ANGELONE, removed A.M. without assessing if a safety plan could be put in place without removal. "A child abuse investigator has the duty to investigate information that would clarify matters prior to separating children from their parents." (*Wallis,*(2000) 202 F.3d at 1138, citing *Sevigny v. Dicksey* (4th Cir. 1988) 846 F.2d 953, 957).

106.    In doing so, BERGLUND,  SHOLTY-SCALZO, BALLARD, BRADFORD and/or ANGELONE failed to abide by practices, policies, and procedures, or if acted under them created these aforementioned violations. BERGLUND, SHOLTY-SCALZO, BALLARD, BRADFORD, and/or ANGELONE accomplished removal by way of fraud upon the court through misrepresentations and perjured testimony by stating to the Court that TRISH had a history of using methamphetamines, that she was unaware of the dangers living with a registered sex offender posed, that she had failed to remove herself from a home with a sex offender prior, she didn't understand the nature of her participation, and that she would continue to put A.M. in danger through contact with the father and grandfather.  TRISH as stated hereinabove that she had father and grandfather leave their home within days of A.M.'s removal. TRISH to date has not once communicated with grandfather and father was only allowed back into the house once

he received help for his alcohol abuse which was in March 2020, they are still together and he is sober to date.

107.     Plaintiffs allege that the removal of A.M. was accompanied and caused by said defendant's fraud, misrepresentations, and repeated failures to include exculpatory evidence, and failure to provide pre-placement services and to offer an ultimatum that either A.M. would have to be removed if the perpetrators did not leave the home (or TRISH left the home with A.M.) as such they are not immune to liability pursuant to Government Code Section 820.21.

108.     Plaintiffs re-allege the allegations of paragraph 100 and 102 as said damages were a direct and proximate cause of defendants' violation of plaintiff's rights to familial association under the Fourteenth Amendment. The punitive damage allegations of paragraph 101 apply in this cause of action to all individual defendants.

**SECOND CAUSE OF ACTION**

Violation of Rights to Familial Association - Removal of S.M.

(Plaintiffs against SHOLTY-SCALZO, POQUETTE, BALLARD, BRADFORD, ANGELONE, DOE 2)

109.     Plaintiffs reallege and incorporate paragraphs 1 through 99 above, as though fully set forth.

110.     Plaintiffs allege the facts and circumstances set forth herein above constitute a cause of action, and set forth all the necessary elements, for a cause of action, against defendants SHOLTY-SCALZO, POQUETTE, BALLARD, BRADFORD, ANGELONE, DOE 2 and by virtue of the conspiracy underlying their actions, against all other individually named defendants and unknown DOE defendants, and each of them, for a violation of their constitutional right to

familial association pursuant to the 4th and 14th Amendments to the U.S. Constitution, and 42

U.S.C. Section 1983, specifically with regard to the removal of S.M. from TRISH and/or STAN

in the absence of imminent risk of serious bodily injury to S.M., or other exigent circumstances,

justifying such removal.

111.    SHOLTY-SCALZO, POQUETTE, BALLARD, BRADFORD, ANGELONE and/

or DOE 2 obtained a Protective Custody Warrant alleging 300(j) without considering the nature

of the alleged abuse of the sibling, gender difference, and other factors the court would consider

probative in this case such as the fact that STAN and Lonnie had been out of the home for over

three months at the time of S.M.'s removal, and TRISH had been engaging in counseling since

A.M.'s removal.

112.    TRISH and/or STAN allege that the removal of S.M. was accompanied and

caused by said defendants' fraud, misrepresentations, and without proper justification and

inquiry, and through defendants' actions of maliciously falsifying evidence, and presenting

fabricated evidence to the court at the detention and jurisdiction hearings as more fully set forth

herein above and below. "A child abuse investigator has the duty to investigate information that

would clarify matters prior to separating children from their parents." (*Wallis v. Spencer* (2000)

202 F.3d 1126,1138, citing *Sevigny v. Dicksey* (4th Cir. 1988) 846 F.2d 953, 957). DOE 2,

SHOLTY-SCALZO, POQUETTE, BALLARD, BRADFORD, and/or ANGELONE removed

S.M. without first speaking to TRISH or STAN and without assessing if a safety plan could be

put in place without removal. SHOLTY-SCALZO, POQUETTE, BALLARD, BRADFORD,

ANGELONE and/or DOE 2 made no attempts to make a collateral contact with TRISH's

counselor Jill Chipman, family members other than CARTER, assess her home, and/or

acknowledge her positive mental health assessment by the county.

113.    In doing so SHOLTY-SCALZO,  POQUETTE, BALLARD, BRADFORD, and/or

ANGELONE and DOE 2 failed to abide by practices, policies, and procedures, or if acted under

them created these aforementioned violations, especially those which would have allowed S.M.

to remain in the home. SHOLTY-SCALZO, POQUETTE, BALLARD, BRADFORD,

ANGELONE, and/or DOE 2 accomplished removal by way of fraud upon the court through

misrepresentations and perjured testimony by stating to the Court that TRISH had a history of

using methamphetamines, that she was unaware of the dangers living with a registered sex

offender posed because she previously lived with one and did not understand the nature of this

action, she didn't understand the nature of her participation, and that she would continue to put

S.M. in danger through contact with the father and grandfather. SHOLTY-SCALZO,

POQUETTE, BALLARD, BRADFORD, ANGELONE, and/or DOE 2 knew there was no

evidence to support the allegations against TRISH. TRISH as stated hereinabove had father and

grandfather leave within days of A.M.'s removal. At the time of S.M.'s birth it had been more

than three months since she had contact with Father or grandfather, Lonnie Smith. TRISH, to

date, has not once communicated with grandfather and father was only allowed back into the

house after he got help for his alcohol abuse which was not until March 2020, TRISH and STAN

are still together and he is sober to date.

114.    Plaintiffs allege that the removal of S.M. was accompanied and caused by said

defendant's fraud, misrepresentations, and repeated failures to include exculpatory evidence, and

as such they are not immune to liability pursuant to Government Code Section 820.21. SHOLTY-

SCALZO, POQUETTE, BALLARD, BRADFORD, ANGELONE, and/or DOE 1 repeated these baseless allegations in subsequent court documents.

115.    TRISH alleges that S.M.'s removal was due to a dislike and bias toward TRISH due to TRISH's open distrust of CWS due to her prior interactions with CWS, such as A.M.'s removal, and her older daughter C.M.'s removal 14 plus years prior. C.M.'s removal was based on the false allegation by CARTER of mental illness, substance abuse, and parenting problems and the previous removal of four of her children, which both had been more than 14 years prior and where SHOLTY-SCALZO told TRISH and STAN, at a home visit in 2018, there was no reason that C.M. had been removed from TRISH. TRISH was treated as a perpetrator herself and defendants failed to act under COUNTY guidelines and treat TRISH with empathy.

116.    Plaintiffs re-allege the allegations of paragraph 100 and 102 as said damages were a direct and proximate cause of defendants' violation of plaintiff's rights to familial association under the Fourteenth Amendment. The punitive damage allegations of paragraph 101 apply in this cause of action to all individual defendants.

## THIRD CAUSE OF ACTION

Violation of Rights to Familial Association - Continued Detention of A.M. and S.M.

(Plaintiffs against Defendants BERGLUND, SHOLTY-SCALZO, POQUETTE, BALLARD, BRADFORD, and ANGELONE)

117.    Plaintiffs reallege and incorporate paragraphs 1 through 99 above, as though fully set forth.

118.    Plaintiffs allege the facts and circumstances set forth hereinabove constitute a cause of action, and set forth all necessary elements, for a cause of action, against defendants,

BERGLUND, SHOLTY-SCALZO, POQUETTE, BALLARD, BRADFORD, and ANGELONE by virtue of the conspiracy underlying their actions, against all other individually named defendants and unknown DOE defendants, and each of them, for a violation of their constitutional rights to familial association pursuant to the 14th Amendment to the U.S. Constitution, specifically with regard to the continued detention of A.M. and S.M. out of the home and care of TRISH and/or STAN, particularly when accomplished as it was, by the way of fraud upon the court through misrepresentations, perjured testimony, and the failure/refusal to include or disclose exculpatory evidence.

119.    Plaintiffs allege that the continued detention of A.M. and S.M. was accompanied and caused by said defendants' fraud, misrepresentations, and repeated failures to include exculpatory evidence, and the obtaining of statements by coercion and duress, and as such they are not immune from liability pursuant to Government Code Section 820.21.

120.    TRISH alleges that A.M.'s and S.M.'s continued detentions were also due to a bias toward her for having her right's terminated (although it was voluntary decision on the part of TRISH to give up four of her children for adoption as she was very young, and the fifth one was taken away suspiciously) as to five of her prior children and TRISH's open distrust of CWS, which led to her unfair treatment.

121.    Plaintiffs re-allege the allegations of paragraph 100 and 102 as said damages were a direct and proximate cause of defendants' violation of plaintiff's rights to familial association under the Fourteenth Amendment. The punitive damage allegations of paragraph 101 apply in this cause of action to all individual defendants.

### FOURTH CAUSE OF ACTION

PATRICIA A. E. MIROTH, STANLEY R. MIROTH V. COUNTY OF TRINITY ET. AL. - 46

Monell Related Claim

(TRISH and STAN against COUNTY OF TRINITY and DOES 1-20 INCLUSIVE)

122.    Plaintiffs reallege and incorporate paragraphs 1 through 99 above, as though fully set forth.

123.    At all relevant times herein, Plaintiffs allege that it is a policy, practice, procedure or custom of the COUNTY, including through its entity HHS and CWS to withhold exculpatory evidence and any evidence favorable to the parent, from the court and from the parties to a dependency hearing, in violation of state law that requires such a disclosure. (Cal. Rules of Court 5.546).

124.    At all relevant times herein, Plaintiffs allege that it is a policy, practice, procedure or custom of the COUNTY, HHS, and CWS social workers to reuse or fail in routine manner and fashion, to fulfill statutory and regulatory requirements to provide reunification services, in any case where an alleged abuser refuses to "admit" that they abused a child or children as alleged by the COUNTY.

125.    At all relevant times herein, Plaintiffs allege that it is a policy, practice, procedure and/or custom, that HHS/CWS social workers are trained to use the refusal to "admit" to alleged abuse as a basis for claiming abuser has "failed" or is making "no progress," and to use this as a basis to deny reunification services. Defendants stated as such and these words were repeated throughout the case and in the appellate order, "[Mother's] inability to recognize the issues that led to removal, in combination with two prior failed dependency cases, sends a strong message that she is not amenable to services, and if given a change will continue to abuse any child in her home," defeating her appeal.

126.    At all relevant times herein, Plaintiffs allege that it is a policy, practice, procedure or custom of the COUNTY through HHS and CWS established and/or followed policies, procedures, customs and/or practices causing violations of TRISH's and STAN's constitutional rights under the 1st, 4th, and 14th Amendments, by, but not limited to, the policy of detaining children without a finding of exigent circumstances at the time of the removal; policy of detaining children when the harm no longer exists at the detention hearing; the policy of using duress, coercion, fabrication and/or false testimony or evidence; failing to seek out alternative placement to foster care with ready and willing relatives; failing to provide exculpatory evidence in preparing and presenting reports and court documents to the Court causing an interference with the TRISH's and STAN's familial relations and injuring them; by acting with deliberate indifference and/or failure in training its officers, agents, and employees, in providing Constitutional protections guaranteed to individuals, including those under the 1st, 4th, and 14th Amendments when carrying out actions related to child abuse and dependency proceedings as prohibited by Government Code Section 820.21, and as more fully set forth herein and where "[a] local government may not be held liable for it employees' violations of section 1983 unless the constitutional violation was caused by its official policy, practice or custom.'" *Kerkeles v. City of San Jose*, 199 Cal.App.4th 1001, 1015-1016.

127.    At all relevant times herein, Plaintiffs allege that it is a policy, practice, procedure or custom of the COUNTY, through HHS and CWS, had a duty to TRISH and STAN at all times to follow policies, procedures, practices, and customs, and use reasonable care in reviewing the actions of all its agents, officers, and employees and to refrain from acting with deliberate indifference to the  protections that are guaranteed to TRISH and STAN under the 1st, 4th, and

14th Amendments of the U.S. Constitution which has caused them the injuries and damage herein.

128.    At all relevant times herein, Plaintiffs allege the COUNTY breeched its duties and obligations to TRISH and STAN including but not limited to, failing to establish, implement, and follow proper Constitutional policies, procedures, customs and practices by failing to properly supervise, train, control, and review their agents and employees as to their compliance with Constitutional safeguards; and by permitting defendants BERGLUND, SHOLTY-SCALZO, POQUETTE, BALLARD, BRADFORD, ANGELONE, and HAMILTON, and DOES 1-20 inclusive, to engage in unlawful and unconstitutional conduct as is alleged herein.

129.    At all relevant times herein, Plaintiffs allege the COUNTY breeched its duties and obligations to TRISH and STAN including but not limited to, failing to establish, implement, and follow proper Constitutional policies, procedures, customs and practices.

130.    Defendants COUNTY, HHS, CWS, BERGLUND, SHOLTY-SCALZO, POQUETTE, BALLARD, BRADFORD, ANGELONE, and HAMILTON, and DOES 1-20 inclusive, knew, or should have known, that due to their breach of the aforementioned duties and obligations that it was foreseeable that they would and did cause TRISH and STAN to be injured and damaged by their unlawful policies and acts as alleged herein and as such violated public policy as to their legal duties to TRISH and STAN. And upon such action, acted with deliberate indifference to the rights of, and obligations to TRISH and STAN, as to established law by failing to establish, implement, and carry out policies, procedures, practices, and customs in accordance with the U.S. Constitution, state and federal laws, state regulations, and by failing to properly supervise, control, manage, and direct the actions of its officers, agents, and employees

which resulted in the failure to meet or follow requirements for the removal of children from

their parents, interviewing of individuals, the act of accurate and truthful reporting of evidence

and testimony to the Court, the placement of children with family, and the acts of coercion,

fabrication, and duress upon parents, the acts of social workers taking witness statements in an

un-witnessed, unrecorded, and unsupervised setting for the express purpose of avoiding any

possibility that the claims of the social worker as to what was said or disclosed, or can be

contradicted by another adult, the facts and circumstances set forth herein above constitute a

cause of action, and set forth all necessary elements, for a cause of action, against defendants,

COUNTY OF TRINITY, TRINITY COUNTY HEALTH AND HUMAN SERVICES, TRINITY

COUNTY CHILD WELFARE SERVICES, HAMILTON, BERGLUND, SHOLTY-SCALZO,

POQUETTE, BALLARD, BRADFORD, and ANGELONE, and by virtue of the conspiracy

underlying their actions, and against all unknown DOE defendants, for a violations occurring

under 42 U.S.C. section 1983 for the COUNTY having established policies, procedures,

practices, and customs that caused the loss of plaintiff's constitutional rights stated herein, and as

such gave rise to these constitutional violations. "A local government may not be held liable for

it employees' violations of section 1983 unless the constitutional violation was caused by its

official policy, practice or custom.'" *Kerkeles v. City of San Jose*, 199 Cal.App.4th 1001,

1015-1016.

131.    Plaintiffs also argue that they have properly stated a section 1983 claim against

the County defendants by alleging that social workers made a series of knowingly false

statements and intentionally omitted exculpatory information during the dependency

proceedings. (*See Beltran v. Santa Clara County* (9th Cir. 2008) 514 F.3d 906, 908, where

"social workers 'are not entitled to absolute immunity from claims that they fabricated evidence during an investigation or made false statements in a dependency petition'").

132.    Plaintiff re-alleges the allegations of paragraphs 100 and 102 as said special and general damages relate to a cause of action for a violation under 42 U.S.C. section 1983 as well as incurring attorney fees, costs, and expenses, including those authorized by 42 U.S.C. Section 1988, to an extent and in an amount subject to proof at trial.

**FIFTH CAUSE OF ACTION**

Violation of Right to Freedom of Speech - Disparagement by Social Workers

(TRISH against BERGLUND, SHOLTY-SCALZO, POQUETTE, BALLARD, BRADFORD,

ANGELONE, and HAMILTON, and DOES 1-20 INCLUSIVE)

133.    TRISH realleges and incorporates paragraphs 1 through 99 above, as though fully set forth.

134.    TRISH alleges the facts and circumstances set forth hereinabove constitute a cause of action, and set forth all necessary elements, for a cause of action, against defendants, BERGLUND, SHOLTY-SCALZO, POQUETTE, BALLARD, BRADFORD, ANGELONE, and HAMILTON, and by virtue of the conspiracy underlying their actions, and against all unknown DOE defendants, for a violation of her constitutional rights to freedom of speech pursuant to the 1st Amendment of the U.S. Constitution, and specifically regarding the restraint of speech by the threat of ANGELONE to take her children permanently away if she did not stop stalking.

135.    TRISH realleges the allegations of paragraph 100 and 102 as said damages were a direct and proximate cause of defendants' violation of plaintiff's rights to freedom of speech

under the First Amendment of the Constitution. The punitive damages allegations of paragraph 101 apply in this cause of action to all individual defendants.

## SIXTH CAUSE OF ACTION

Violation of State Civil Rights - Unruh Civil Rights Act

(TRISH and STAN against SHOLTY-SCALZO, BERGLUND, POQUETTE, BALLARD, BRADFORD, ANGELONE, HAMILTON, and COUNTY)

136.    Plaintiffs reallege and incorporate paragraphs 1 through 99 above, as though fully set forth.

137.    Plaintiffs allege the facts and circumstances set forth herein above, and allegations herein below, constitute a cause of action and set forth all necessary elements for a cause of action against defendants SHOLTY-SCALZO, BERGLUND, POQUETTE, BALLARD, BRADFORD, ANGELONE, HAMILTON, and COUNTY,  and by virtue of the conspiracy underlying their actions, and against all unknown DOE defendants, for a violation of plaintiff's rights under the Unruh Civil Rights Act.

138.    Each of said defendants are individuals described in Government Code Section 820.21(a), and each of them, in committing repeated violations of Government Code Section 820.21, did in fact commit perjury, fabricate evidence and fail to include exculpatory evidence.

139.    The acts of said defendants that are alleged in this complaint, interfered or attempted to interfere with the plaintiffs' exercise of her rights under Civil Code Sections 43, 52 and 52.1, thereby entitling plaintiffs to compensatory, inclusive of those set forth in paragraph 100 and 102, and punitive damages set forth in paragraph 101 above, in addition to a statutory

civil penalty of $25,000 and attorney's fees, provided for in Civil Code Section 52.1(b) and are hereby requested.

140.    Defendants knew or should have known that their actions alleged herein were likely to injure plaintiffs, and plaintiffs are informed and believe, and thereon allege, that the COUNTY, and the individually named defendants, intended to cause injury to plaintiffs and acted with a willful and conscious disregard of plaintiffs' rights as secured by Civil Code Section 52.1 thus entitling plaintiffs to recover punitive damages pursuant to Civil Code Section 52.1(b).

141.    Plaintiffs allege that the violation of their state civil rights pursuant to the Unruh Act were accompanied and caused by defendants' fraud, misrepresentation, repeated failures to include exculpatory evidence, and the obtaining of statements by coercion and duress, as prohibited by Government Code Section 820.21, and as more fully set forth herein above.

142. Plaintiffs reallege the allegations of paragraph 100 and 102 as said damages were a direct and proximate cause of defendants' violation of plaintiff's rights under the Unruh Act. The punitive damage allegation of paragraph 101 apply in this cause of action to all individual defendants.

## SEVENTH CAUSE OF ACTION

Violate of Right to Have Effective Assistance of Counsel Provided by County

(TRISH against COUNTY)

143.    TRISH realleges and incorporates paragraphs 1 through 99 above, as though fully set forth.

144.    TRISH alleges the facts and circumstances set forth herein above, and allegations herein below, constitute a cause of action and set forth all necessary elements for a cause of action against defendant COUNTY.

145.    TRISH alleges that at the time of the detention she was indigent and as such had a right to appointed counsel because out-of-home placement was an issue. (W&IC 317(b); *In re Kristin H.* (1996) 46 Cal.App. 4th 1635, 1659).

146.    TRISH alleges COUNTY hired Johnson to serve as her appointed attorney and as such she was entitled to competent representation. (W&IC section 317.5(a)).

147.    TRISH alleges COUNTY failed to provide training, assess the attorney for competency or make any other kind of evaluations or assessments to determine  Johnson was properly performing his job which was to zealously represent TRISH. Johnson failed on multiple occasions to provide evidence of TRISH's long-standing non-use of drugs where she provided evidence to him in the form of drug tests as far back as 2001, evidence of participation in domestic violence victims classes, and completion certificates of parenting classes, and call Trish as a witness as to the fact she had STAN and Lonnie Smith move out of her residence, and had zero contact with Lonnie, that there was available witnesses to refute the allegation of stalking, describe TRISH's positive progress, and participation in domestic violence victim and parenting classes. Johnson also has a duty to not disparage his client, which he did maliciously in an email dated March 20, 2019 telling TRISH, "[y]ou have a lot of work still [to] do on yourself. Don't get pregnant."

148.    These callous statements constitute a breach of a lawyer's fiduciary duty to treat his client with the utmost candor, rectitude, care, loyalty and good faith." Restatement of the Law

Governing Lawyers § 16(3); *Burdett v. Miller*, 957 F.2d 1375 (7th Cir. 1992) (Posner, J.) and show that his advocacy of TRISH was not a consideration let alone a priority. When his performance was complained to COUNTY, COUNTY failed to follow-up, assess or evaluate the performance and as violation of the duty of loyalty and care.

149.    TRISH alleges that the COUNTY by not assessing Johnson allowed her due processes rights to be violated at the detention, jurisdiction, and 366.26 parental rights termination hearing, where Johnson failed to argue on her behalf that COUNTY had wrongfully detained A.M. and S.M., failed to provide her with pre-placement services, and failed to make statements or provide documentation that TRISH was making progress through counseling, parenting classes, and DV victim classes through exculpatory evidence to the Court, and declarations from counselor, Jill Chipman and Human Resource Network employee, Angela Norton, who both wrote letters on TRISH's behalf, and at which hearings TRISH was denied reunification services and subsequently at the 366.26 hearing her parental rights were terminated. (*See In re Arturo A.* (1992) 8 Cal.App. 4th 229, 238).

150.    TRISH alleges that this occurred knowingly and with conscious disregard of the consequences and that it is the COUNTY'S responsibility to ensure the attorney's they hire are competent. Johnson refused to provide to the Court the letters mentioned above, years worth of documentation that TRISH never tested positive for methamphetamines, witnesses willing to state that TRISH had been with them, evidence contrary to the stalking allegation, and at which such life changing hearings and where TRISH's constitutional rights were at issue was denied reunification services and her parental rights were terminated.

151.    TRISH alleges that she was deprived of the right to correct her counsel's erroneous acts and omissions and as such is consistent with a fundamental fairness associated with a due process claim. Johnson was apathetic in his defense of TRISH's case where the law and facts supported her right to reunification services, putting her on track to receive her children into her home and the COUNTY is liable for its failure to ensure counsel is advocating on their client's behalf. None of the safeguards to prevent continuing removal of a child from the home could derail her case once counsel made this initial error.

152.    TRISH realleges the allegations of paragraph 100 and 102 as said damages relate to a cause of action for a violation of TRISH's right to the effective assistance of counsel through the COUNTY. The punitive damage allegation of paragraph 101 apply in this cause of action to COUNTY.

**EIGHTH CAUSE OF ACTION**

Fraud

(Plaintiffs against SHOLTY-SCLAZO, BERGLUND, POQUETTE, BALLARD, BRADFORD, and ANGELONE)

153.    Plaintiffs reallege and incorporate paragraphs 1 through 99 above, as though fully set forth.

154.    Plaintiffs allege the facts and circumstances set forth herein above, and allegations herein below, constitute a cause of action and set forth all necessary elements for a cause of action against defendants SHOLTY-SCLAZO, BERGLUND, POQUETTE, BALLARD, BRADFORD, and/or ANGELONE, and by virtue of the conspiracy underlying their actions, and against all unknown DOE defendants, for fraud.

155.    Plaintiffs allege that SHOLTY-SCLAZO, BERGLUND, POQUETTE, BALLARD, BRADFORD, and/or ANGELONE, and by virtue of the conspiracy underlying their actions, and against all unknown DOE defendants, engaged in a willful misrepresentation of fact. (See Cal. Civ. Code section 3294). SHOLTY-SCLAZO, BERGLUND, POQUETTE, BALLARD, BRADFORD, and/or ANGELONE intentionally misrepresented to the Court and in their reports, concealed known facts from the Court, and omitted same from their reports, and falsely represented facts both written and oral, and concealed what should have been disclosed. (See Cal Civ. Code section 1572).

156.    TRISH alleges SHOLTY-SCLAZO, BERGLUND, POQUETTE, BALLARD, BRADFORD, and/or ANGELONE acted intentionally to deceive the Court into believing that TRISH has a history of drug use, and that she was unreliable, had other children taken for the same reasons as A.M. and S.M., and that she failed to make any progress at all, which led to the denial by the Court of her reunification services putting her on the fast track for termination of her parental rights.

157.    STAN alleges SHOLTY-SCLAZO, BERGLUND, POQUETTE, BALLARD, BRADFORD, and/or ANGELONE acted intentionally to deceive the Court into believing that his other child was taken for the same reasons as A.M. and S.M., and that he failed to make any progress at all, which led to the denial by the Court of his reunification services putting him on the fast track for termination of his parental rights.

158.    Plaintiffs allege SHOLTY-SCLAZO, BERGLUND, POQUETTE, BALLARD, BRADFORD, and/or ANGELONE represented to the Court that these facts herein above were true, but SHOLTY-SCLAZO, BERGLUND, POQUETTE, BALLARD, BRADFORD, and/or

ANGELONE's representations were false and SHOLTY-SCLAZO, BERGLUND, POQUETTE, BALLARD, BRADFORD, and/or ANGELONE knew they were false and knew the representations were false at the time they were made to the Superior Court of Trinity County. In the alternative, these representations were made recklessly and without conscious regard for the truth.

159.    Plaintiffs allege SHOLTY-SCLAZO, BERGLUND, POQUETTE, BALLARD, BRADFORD, and/or ANGELONE intended that other CWS agents and employees and the Court would rely on these statements and other CWS agents and employees and the Court did in fact rely on these assertions and TRISH and STAN were harmed by the permanent removal of their children from their lives.

160.    Plaintiffs herein re-allege the allegations of paragraph 100 and 102 as said damages relate to a cause of action for a violation of their civil rights. The punitive damage allegations of paragraph 101 apply in this cause of action to all individual Defendants.


**NINTH CAUSE OF ACTION**

Intentional Infliction of Emotional Distress

(Plaintiffs against SHOLTY-SCLAZO, BERGLUND, POQUETTE, BALLARD, BRADFORD, ANGELONE and DOEs 1-10)

161.    Plaintiffs reallege and incorporate paragraphs 1 through 99 above, as though fully set forth.

162.    Plaintiffs allege the facts and circumstances set forth herein, and allegations herein, constitute a cause of action and set forth all necessary elements for a cause of action

against defendants SHOLTY-SCLAZO, BERGLUND, POQUETTE, BALLARD, BRADFORD, ANGELONE for intentional infliction of emotional distress.

163.    Plaintiffs allege that the defendants engaged in the aforesaid outrageous conduct, which was intended to cause plaintiffs, and did cause plaintiffs, severe emotional distress. In the alternative, plaintiffs allege that the defendants engaged in said conduct with reckless disregard of the probability of causing plaintiffs' emotional distress.

164.    Plaintiffs were present at and during the times such outrageous and unprivileged conduct occurred, these acts of conduct include comments, statements, and testimony under oath in the juvenile proceedings, and Defendants knew Plaintiffs were present, and that Plaintiff simply as parents of two children were susceptible to suffering severe emotional distress when separating A.M. and S.M. from TRISH and STAN, and was susceptible to suffering severe emotional distress when listening to lies being spoken in court and consequently having their children continued to be detained, reunification services refused, parental rights terminated, and finally having their children adopted out.

165.    Plaintiffs allege that the intentional infliction of emotional distress upon their psyche by said defendants, was accompanied and caused by said defendants' fraud, misrepresentations, repeated failures to include exculpatory evidence, and the obtaining of statements by coercion and duress, as prohibited by Government Code Section 820.21, and as more fully set forth herein above.

166.    TRISH and STAN allege herein the allegations of paragraph 100 and 102 as these damages relate to a cause of action for intentional infliction of emotional distress. The punitive damages allegations of paragraph 101 apply in this cause of action to all individual defendants.

PATRICIA  A. E. MIROTH, STANLEY R. MIROTH V. COUNTY OF TRINITY ET. AL. - 59

## TENTH CAUSE OF ACTION

Negligent infliction of Emotional Distress

(Plaintiffs against Defendants SHOLTY-SCLAZO, BERGLUND, POQUETTE, BALLARD,

BRADFORD, ANGELONE)

167.    Plaintiffs incorporate paragraphs 1 through 99 above, as though fully set forth at this point.

168.    Plaintiffs allege the facts and circumstances set forth herein above, and allegations herein below, constitute a cause of action and set forth all necessary elements for a cause of action against defendants SHOLTY-SCLAZO, BERGLUND, POQUETTE, BALLARD, BRADFORD, ANGELONE for negligent infliction of emotional distress.

169.    Plaintiffs allege that the negligent infliction of emotional distress upon their psyche by said defendants, was accompanied and caused by said Defendants' fraud, misrepresentations, repeated failures to include exculpatory evidence, and the obtaining of statements by coercion and duress, as prohibited by Government Code Section 820.21, and as more fully set forth herein above.

170.    The individually named defendants and unknown DOE defendants, and each of them, engaged in negligent conduct and/or violated the statutory standards (duties) set forth in Government Code section 820.21, Welfare and Institutions Code 306 and 309, so as to cause plaintiffs serious emotional distress of an ongoing and enduring nature.

171.    Plaintiffs re-allege the allegations of paragraph 100 and 102 as said damages relate to a cause of action for negligent infliction of emotional distress.

### ELEVENTH CAUSE OF ACTION

Defamation

(TRISH against CARTER)

183.    TRISH realleges and incorporates paragraphs 1 through 99 above, as though fully

set forth.

184.    TRISH alleges the facts and circumstances set forth herein, and allegations herein,

constitute a cause of action and set forth all necessary elements for a cause of action against

defendant CARTER for defamation as under California Code of Civil Procedure section 46.

185.    CARTER repeatedly reported false information about TRISH to CWS.

186.    It was reasonably understood that those that read or heard CARTER'S statements

that is was about TRISH.

187.    Both on its face, and because of the facts and circumstances known to the CWS

employees who heard or read the statement, it was reasonably understood CARTER meant to

convey that TRISH used methamphetamines and had mental health issues, and that generally

could not take care of her child(ren). CARTER's statements caused CWS to investigate

CARTER'S statements as a child abuse allegation against TRISH and caused CWS to remove a

child prior to A.M. and S.M. and provided the basis of a false storyline perpetrated by CWS

throughout the case that TRISH was a drug user, resistant, had mental health issues, and was

unable to care for any child. CARTER'S false statements to CWS employees or aided and

abetted CWS employees to remove A.M. and S.M., and speak about TRISH in a negative light

with no actual evidence to support the accusations.

188.    CARTER'S defamatory statements were false.

189.    CARTER made the statements knowing they were false or had serious doubts about the truth of the statements.

190.    As a result, Plaintiff TRISH has suffered damages in an amount to be proven at trial according to proof, including but not limited to, harm her reputation, emotional harm, exposure to contempt, shame, threats, labeling as a "drug user"and  "a trouble maker" and in aiding and abetting in A.M. and S.M.'s removal.

191.    In making the defamatory statements hereinabove, CARTER acted with malice, oppression, or fraud and is thus responsible for the punitive damages allegation of paragraph 101.

### TWELFTH CAUSE OF ACTION

Declaratory and Injunctive Relief: County Training

(Plaintiffs Against COUNTY)

192.    Plaintiffs reallege and incorporate paragraphs 1 through 99 above, as though fully set forth.

193.    As stated herein, Defendants, and each of them, in concert and conspiracy with each other and/or alone, did with deliberate indifference to the obligations to Plaintiffs including Plaintiffs constitutional rights, acted, practiced, and trained under the polices, practices, and procedures of COUNTY, HHS, and CWS or through the lack of policies, customs, and procedures violated the constitutional rights Plaintiffs and others so similarly situated.

194.    As stated herein, Defendants unlawful conduct, is attributed to unwritten, and/or written, policies, customs, and procedures of COUNTY, HHS, and/or CWS.

195.    As presently applied these policies, procedures, and customs allow COUNTY employees to be trained to and directed to remove children immediately from their parent's custody and control, by fraud and misrepresentation to the judicial officer with the goal of obtaining a protective custody warrant, when knowingly false or with reckless disregard for the truth or falsity of the representations, and/or without sufficient personal knowledge. As such these allowances by COUNTY constitute a deliberate indifference to Plaintiffs' rights.

196.    Plaintiffs allege individually named Defendants were not trained, or not trained adequately to be proficient in:

- use of pre-placement services to keep children in the home;

- documentation requirements for protective custody warrants which include affidavits;

- representing truthfully in court under penalty of perjury;

- the proper methods and techniques regarding safety assessments and family risk assessments using the Structured Decision Making System;

- using fair and proper practices in conducting child abuse investigations including use of empathy and the abolishment of the practice and custom of labeling as "non-complaint" or "not able to understand the nature of their actions" when parent is resistant to CWS intervention.

- using fair and proper practices to report the results of an investigation including the requirement to fully report all sides and any and all information contrary to the position of the social worker investigating the case including when seeking a protective custody warrant and at all times before the court of law;

- using collateral contacts especially the use of counselor in making major decisions regarding parent's progress;

PATRICIA  A. E. MIROTH, STANLEY R. MIROTH V. COUNTY OF TRINITY ET. AL. - 63

- understanding the nuances of state and federal law as well as all other regulations regarding detention and jurisdiction in considering a finding of "no progress;"

- prioritizing location of all family placement options and to follow through with such options;

- understanding and abiding by the California Welfare and Institutions Code, the California Code of Regulations, and the California Department of Social Services Policy Manual, and other COUNTY adopted practices such as the Structured Decision Making System.

197.    Plaintiffs allege and believe that COUNTY, HHS, and CWS employees, agents, and officials are instructed and encouraged to separate children from their parents almost as if a stigma exists for each and every parent that comes into contact with CWS and as such CWS employees, officials, and agents, forgo conducting a empathic, fair, full, and systematic investigation of the situation and the family members. Instead CWS employees, agents, and officers are not trained or versed in the law including the mandatory requirements of W&IC Sections 306 and/or 309 which require social workers to engage immediately in all reasonable efforts to prevent the removal of a child from their family. Defendants BERGLUND, POQUETTE, SHOLTY, SCALZO, BALLLARD, ANGELONE, BRADFORD, and HAMILTON undertook without legal knowledge to assess the family, provide replacement options, investigate discrepancies between what TRISH and STAN and previous CWS reports stated, seek out, review, and consider exculpatory evidence, create a safety plan, and monitor the family, which would have included A.M. and S.M. to remain in home, to provide domestic violence services, counseling, and classes to parents, all of which constitutes a deliberate indifference to the rights of TRISH and STAN and others similarly situated.

198.    Plaintiffs allege that these unlawful practices described hereinabove (i.e written and unwritten policies, practices, and customs) create an atmosphere of support for child removal including encouragement for social workers to seek out opinions and individuals such as CARTER in this instant case, that support a finding of jurisdiction over subject children without any background investigations, or second opinions, where other contradicting evidence is ignored, concealed, or minimized. Further, where the CWS atmosphere promotes detaining children through fabrication of evidence, misconstruing evidence, and the committal of perjury. As such, these actions herein constitute a deliberate indifference to the rights of TRISH and STAN and others similarly situated.

199.    COUNTY social workers through their own policies and procedures have failed to comply with state and federal law through failure to abide by their own policies and procedures including but not limited to

- conducting a unbiased, reasonable, and complete assessment of relatives of the child who are entitled to preferential placement of a child immediately upon removal;

- creation of a safety plan to prevent removal;

- offering pre-placement services to prevent removal of children from their family;

- the creation and application of a case plan designed to keep the children in the home;

- following procedures for gathering and preservation of relevant evidence;

- following proper interviewing techniques for parents and children;

- providing accurate and truthful reports to the Court of law;

- provide timely reports to the parties in advance of hearings;

- providing exculpatory evidence which is in contravention to the position of the social worker to obtain jurisdiction of a child(ren);

- complying with rules regarding the investigation of medical needs of children or fulfillment of those needs at the onset of the case.

200.    It is also the future protection of families and children, against actual or threatened injury and violations of their constitutional rights both substantive and due process by defendants acting under their current mode of operandi with the present policies, practices, and customs, that is so urgently needed.

201.    Plaintiffs request that this court restrain COUNTY by an order requiring COUNTY to adopt a new policy that all actions, investigations, and reports are subject to independent review by non-affiliated individuals. That in particular the pre-removal actions, i.e. investigations are made without bias, and with the goal of keeping families intact, where case plans emphasize pre-seizure activities and goals rather than in retrospect after the children have been removed, save those that do present a immediate danger to the well-being of the child. Further training of the law for all COUNTY social workers who are working within Child Welfare Services so that is becomes common knowledge that that a protective custody warrant must be based on fact, and exculpatory evidence must be sought out and disclosed to the Court including and most importantly, information that supports keeping the children in the home.  In addition, all COUNTY social workers who are working within Child Welfare Services CWS social workers be highly trained in trauma, especially intergenerational trauma and adverse childhood experiences, and taught and trained in empathy and as an entity make conscious and public efforts to permanently put aside the practice and belief that parent's who express a

different opinion than that of the position that Child Welfare Services has taken are not "failing to understand the nature of their actions," or "have no insight," or "continue to blame others," or "inability to recognize the issues that led to removal," all comments that are routinely used across in COUNTY and across the United States as ways to remove children permanently from parents.

202.    Without the relief being asked for hereinabove, the injuries and losses suffered by TRISH and STAN are likely to continue with the next family and the likelihood is high that family will not contest the actions, and may not even understand the subtle nuances that can give rise to a malicious detention. In addition, without significant changes the COUNTY will continue to remove children where such removal is considered an adverse childhood experience ("ACE") by the Surgeon General California and has shown to impact children throughout their life leading to social, emotional and physical issues including a higher risk to entering the juvenile court system and at a higher risk for heart disease among many other substantial impacts[11] as a result of their removal and placement in a facility or foster home rather than with their own relatives.

203.    Plaintiffs are informed and believe and herein allege that without a declaratory judgment by this Court condemning the actions, customs, and procedures of COUNTY and all other defendants named herein that the COUNTY culture of complacency in regards to following the law, i.e. federal, state, and county laws, policies, and regulations described herein by

---

[11] For four of more adverse childhood experiences or ACE's in a child's life can cause a staggering amount of physical, mental, and emotional health issues (taken from https://www.acesaware.org/wp-content/uploads/2019/12/ACE-Clinical-Workflows-Algorithms-and-ACE-Associated-Health-Conditions.pdf, last accessed on January 25, 2022), further in a survey of adult retrospective opinions, 79% of children in Trinity County have experienced one or more ACE. This is the highest percent for all counties in the state of California (taken from https://letsgethealthy.ca.gov/goals/healthy-beginnings/adverse-childhood-experiences/ last accessed on January 25, 2022.

aforementioned defendants will continue unabated and other families will experience the

irreparable injury that TRISH and STAN have suffered.

204.    Plaintiffs, the COUNTY, and its residents would greatly profit by this

aforementioned judicial declaration and injunction and as such would provide protection and

assurances against an unwarranted invasion of the State into family life, as well as the ongoing

and all too common constitutional and due process violations.

205.    This is a matter of public policy and the benefits to the community should

outweigh any objection or argument against a declarative and injunctive restraint.

### THIRTEENTH CAUSE OF ACTION

Fraud Upon the Court: Set Aside State Court Judgment of Termination of
TRISH and STAN's Parental Rights
(Plaintiffs Against COUNTY)

206.    Plaintiffs incorporate paragraphs 1 through 99 above, as though fully set forth at

this point.

207.    Plaintiffs allege that SHOLTY-SCLAZO, BERGLUND, POQUETTE,

BALLARD, BRADFORD, and/or ANGELONE by virtue of the conspiracy underlying their

actions, and against all unknown DOE defendants, engaged in a willful misrepresentation of fact.

(See Cal. Civ. Code section 3294). SHOLTY-SCLAZO, BERGLUND, POQUETTE,

BALLARD, BRADFORD, and/or ANGELONE intentionally misrepresented to the Court and in

their reports, concealed or suppressed known material facts from the Court, and omitted same

from their reports, and falsely represented facts both written and oral. (See Cal Civ. Code section

1572).

208.     TRISH alleges SHOLTY-SCLAZO, BERGLUND, POQUETTE, BALLARD, BRADFORD, and/or ANGELONE each of them, and/or in concert and conspiracy with each other acted intentionally to deceive the Court into believing that TRISH has a history of methamphetamine use, did not understand the nature of her harm, was continuously negligent and/or put her children in harm's way, and that she was unreliable, had not attempted to engage in any pre-placement services or that any replacement services were unsuccessful in ameliorating the harm, had other children taken for the same reasons as A.M. and S.M., and that she failed to make any progress at all, which led to the denial by the Court of her reunification services putting her on the fast track for termination of her parental rights.

209.     TRISH alleges these representations were in fact false and defendants, each of them, knew these were false and/or had no reasonable ground for believing the representations were true and further acted intentionally to deceive the Court into believing that. In fact, TRISH had never used methamphetamines, and fought continuously for the social workers to acknowledge this. TRISH's counselor Jill Chipman continuously documented that TRISH was learning from her past mistakes and understanding her part in CWS actions, and TRISH did address the original reasons for A.M.'s and S.M. removal by having STAN and Lonnie permanently move out of the home. As such the facts and circumstances set forth herein above, and allegations herein below, constitute a cause of action and set forth all necessary elements for a cause of action against defendants SHOLTY-SCLAZO, BERGLUND, POQUETTE, BALLARD, BRADFORD, and/or ANGELONE and by virtue of the conspiracy underlying their actions, and against all unknown DOE defendants, for fraud upon the court.

210.     STAN alleges SHOLTY-SCLAZO, BERGLUND, POQUETTE, BALLARD, BRADFORD, and/or ANGELONE acted intentionally to deceive the Court into believing that his other child was taken for the same reasons as A.M. and S.M., pre-placement services were offered and STAN was not able to engage in these services, he did not show protectiveness toward A.M., and that he failed to make any progress at all, which led to the bypass of his reunification services by the Court and put him on the fast track for termination of his parental rights. When in fact STAN had not been offered pre-placement services such as help for his alcoholism and mental health services, he obviously was protective of his daughter as evidenced by the alleged assault on the perpetrator STAN engaged in, and he attended most of his daughter and son's visits where some visits were impossible due to the Carr fire and medical issues, but SHOLTY-SCLAZO, BERGLUND, POQUETTE, BALLARD, BRADFORD, and/or ANGELONE unfairly characterized these visits as "missed" by STAN.

211.     Plaintiffs allege SHOLTY-SCLAZO, BERGLUND, POQUETTE, BALLARD, BRADFORD, and/or ANGELONE represented to the Court that these facts herein above were true or omitted such material facts, but SHOLTY-SCLAZO, BERGLUND, POQUETTE, BALLARD, BRADFORD, and/or ANGELONE's representations were false or material facts omitted and SHOLTY-SCLAZO, BERGLUND, POQUETTE, BALLARD, BRADFORD, and/or ANGELONE knew they were false or knowingly omitted facts and knew the representations were false or knew facts were consciously omitted at the time they were made to the Superior Court of Trinity County. In the alternative, these representations were made recklessly and without conscious regard for the truth.

212.    Plaintiffs allege SHOLTY-SCLAZO, BERGLUND, POQUETTE, BALLARD, BRADFORD, and/or ANGELONE intended that other CWS agents and employees and the Court would rely on these statements and other CWS agents and employees and the Court did in fact rely on these assertions and TRISH and STAN were harmed by the permanent removal of their children from their lives.

213.    Plaintiffs allege SHOLTY-SCLAZO, BERGLUND, POQUETTE, BALLARD, BRADFORD, and/or ANGELONE intended to strip TRISH and STAN of their parental rights, and permanently deprive them of their care and custody of their children violating their constitutional rights and violating Fed Rule of Civ Pro 60(d)(3)[12]. Plaintiff's only just remedy is to reinstate their parental rights as to A.M. and S.M. and make any other orders regarding the reunification of the minors to their parents as this Court deems necessary and appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request this Court:

1.    Issue a declaratory judgment that COUNTY's policies, practices, and customs as described hereinabove violate the civil rights of plaintiff and individuals brought into the juvenile dependency system protected by the 1st, 4th, and 14th Amendments of the United States Constitution and federal and state law afforded to plaintiffs and other individuals brought into the juvenile dependency system. As such, these policies, practices, and customs should be enjoined or modified to protect plaintiffs and all individuals who are brought into the dependency system

---

[12] Rule 60. Relief from Judgment or Order states under (d) Other powers to grant relief (3) set aside judgment for fraud on the court.

as they constitute a deliberate indifference to the rights, safety, and liberties of parents and

children;

2.      Award compensatory damages, both general and special, past and those that are

reasonably certain to occur in the future as proven at trial, in an amount to be proven at trial;

3.      Award punitive damages against the individual defendants and entities, and each

of them, in an amount to be proven at trial for their complete disregard for the rights of plaintiffs;

4.      Award plaintiffs' costs and attorney's fees pursuant to 42 U.S.C. section 1988;

5.      Reverse the termination of TRISH and STAN's parental rights, and make orders

to reunify children and parents, and

5.      Grant plaintiffs such other relief as the Court deems just and proper.


Dated this 18th day of July, 2022

*Shannon C Wilhite*
Shannon C. Wilhite


Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of

Civil Procedure.

Dated this 18th day of July, 2022

*Shannon C Wilhite*
Shannon C. Wilhite

///

///

///

PATRICIA A. E. MIROTH, STANLEY R. MIROTH V. COUNTY OF TRINITY ET. AL.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
*Sacramento*


### VERIFICATION OF PATRICIA A. E. MIROTH


I, Patricia A. E. Miroth, declare the following:

I am a party to this action. The contents of the AMENDED PETITIONERS' COMPLAINT  FOR VIOLATION OF CIVIL RIGHTS (42 U.S.C. 1983), VIOLATION OF STATE CIVIL RIGHTS, FRAUD, INEFFECTIVE ASSISTANCE OF COUNSEL, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, DECLARATORY AND INJUNCTIVE RELIEF are true to my own knowledge, except as to those matters which are stated upon information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.


Dated: July 18, 2022          _____

Patrica Miroth

VERIFICATION OF PATRICIA A. E. MIROTH-1

PATRICIA A. E. MIROTH, STANLEY R. MIROTH V. COUNTY OF TRINITY ET. AL.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
*Sacramento*


## VERIFICATION OF STANLEY R. MIROTH


I, Stanley R. Miroth, declare the following:

I am a party to this action. The contents of the AMENDED PETITIONERS' COMPLAINT  FOR VIOLATION OF CIVIL RIGHTS (42 U.S.C. 1983), VIOLATION OF STATE CIVIL RIGHTS, FRAUD, INEFFECTIVE ASSISTANCE OF COUNSEL, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, DECLARATORY AND INJUNCTIVE RELIEF are true to my own knowledge, except as to those matters which are stated upon information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.


Dated: July 18, 2022          _____

                                              Stanley Miroth


VERIFICATION OF STANLEY R. MIROTH-1