1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   Patricia A. E. Miroth, Stanley R. Miroth,          No. 2:22-cv-00460-KJM-JDP

12                      Plaintiffs,                      ORDER

13         v.

14   County of Trinity, et al.,

15                      Defendants.

16

17         Patricia and Stanley Miroth allege Trinity County and several of its employees[1]

18   wrongfully deprived them of their parental rights and took two children from their custody.  The

19   defendants move to dismiss the complaint.  As explained below, this case amounts to a de facto

20   appeal of several state court orders terminating the plaintiffs' parental rights, which this court has

21   no jurisdiction to hear.  However, it is possible the plaintiffs could amend their complaint to

22   allege the defendants defrauded the state court, and this court would have jurisdiction to hear such

23   a claim.  The complaint is thus **dismissed with leave to amend**.

---

[1] The individual defendants are Liz Hamilton, Mario Angelone, Nicole Hays Bradford, Allison Ballard, Megan Scalzo (formerly Sholty-Scalzo), Angela Berglund and Ashley Poquette. *See* Mot. Mem. at 9, ECF No. 34-1.  When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

I.    **JUDICIAL NOTICE**

The defendants have requested judicial notice of several filings from the plaintiffs' state court proceedings, including protective custody warrants, juvenile dependency petitions, hearing transcripts of dependency proceedings, and findings and orders from dependency proceedings. Request for Judicial Notice (RJN) at 2–3, ECF No. 34-3.  The plaintiffs oppose the request. Opp'n, ECF No. 40.  They argue these documents are "extrinsic evidence" that a court cannot consider without converting the defendants' motion to one for summary judgment.  Opp'n at 9.

A court may consider "matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  This rule permits courts to consider "undisputed matters of public record," such as "documents on file in federal or state courts," in response to a motion to dismiss. *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).  The state court records are public records whose accuracy "cannot reasonably be questioned."  *See* Fed. R. Evid. 201(b).

Moreover, courts may consider "documents not attached to a complaint . . . if no party questions their authenticity and the complaint relies on those documents." *Harris*, 682 F.3d at 1132; *see also Ritchie*, 342 F.3d at 908 ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").  The plaintiffs refer extensively to the documents attached to the defendants' request and the proceedings in which those documents were filed.  Plaintiffs have not questioned those documents' authenticity. *See* Opp'n at 9; *see generally* First Am. Compl. (FAC), ECF No. 29.  The court may consider them without converting the defendants' motion into a motion for summary judgment.  The court **grants** the defendants' request to take judicial notice.

II.   **BACKGROUND**

The claims in this case arise from the removal from plaintiffs' custody of two minor children, A.M. and S.M., and from the related termination of the plaintiffs' parental rights. *See generally* FAC.  The removals were extensively documented over the course of several hearings.

The County received a report of child abuse in January 2018, and after some investigation, it obtained a warrant to remove A.M. from the parents' custody.[2]  *See* FAC ¶¶ 32–39; RJN Ex. A, "AM Protective Custody Order," ECF No. 38-1.  The plaintiffs allege the warrant was obtained "based on a false declaration" and claim the defendants began removal proceedings without first providing assistance and without attempting to protect A.M. using less extreme measures.  FAC ¶¶ 43–45.  They also allege the social workers who signed the warrant did not conduct an investigation and had no personal knowledge of the facts alleged; plaintiffs describe the factual allegations supporting the warrant request as a "fraud, or misrepresentation to the court."  *Id.* ¶¶ 40–41.

A few months later, the County filed a juvenile dependency petition with respect to A.M.  *See* Cal. Welf. & Inst. Code § 340; RJN Ex. B, "AM Juvenile Dependency Petition," ECF No. 38-1.  The petition alleged A.M. had suffered or was at substantial risk of suffering "serious physical harm or illness" and that plaintiffs had allowed A.M. to spend unsupervised time with a registered sex offender.  RJN Ex. B at 7–8 (citing Cal. Welf. & Inst. Code § 300(b)(1) and (d)).  The plaintiffs allege the petition perpetuated a false narrative regarding plaintiff Ms. Miroth, by describing her as a drug user who could not care for her children; the petition also cited the termination of Ms. Miroth's parental rights for five other children, which occurred over fourteen years ago.  FAC ¶ 50; *see* RJN Ex. B.  The plaintiffs argue "[f]ourteen plus years prior is not what [Cal. Welf. & Inst. Code § 300(j)] meant" when the provision considers whether a "child's sibling has been abused or neglected."  FAC ¶ 50.

---

[2] The California Welfare and Institutions Code describes several circumstances in which a juvenile court may decide a child is "a dependent child of the court" and may be removed from parental custody.  *See, e.g.*, Cal. Welf. & Inst. Code § 300(a) ("The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian.").  A juvenile court can issue a "protective custody warrant" in response to a petition alleging a child's circumstances fit those listed in the Welfare and Institutions Code.  *See id.* § 340(a) ("Whenever a petition has been filed in the juvenile court alleging that a minor comes within Section 300 and praying for a hearing on that petition . . . and it appears to the court that the circumstances of his or her home environment may endanger the health, person, or welfare of the minor, . . . a protective custody warrant may be issued immediately for the minor.").

1    At the juvenile court's detention hearing,[3] the presiding judge determined it was necessary

2  to remove A.M. and found there were "no reasonable means by which the child's physical or

3  emotional health may be protected without removing the child from the physical custody of the

4  parent or legal guardian."  RJN Ex. D, "AM Findings and Orders After Detention Hearing" at 28,

5  ECF No. 38-1; *see also* RJN Ex. C, "AM Detention Hearing" at 20:28–21:5, ECF No. 38-1.  The

6  plaintiffs, however, assert the defendants did not "allege facts showing risk to A.M. at the time of

7  the hearing" and lied to the court.  FAC ¶ 51.  For example, they allege the defendants

8  collectively "falsely stated in court that [plaintiffs] made no progress toward remedying the

9  circumstances that led to removal," but Ms. Miroth alleges she actually had taken active steps,

10 such as by attending weekly counseling sessions.  *Id.* ¶ 52.

11   The state court held a jurisdictional hearing with respect to the A.M. petition in July

12 2018.[4]  RJN Ex. E, "AM Jurisdictional Hearing," ECF No. 38-1.  The plaintiffs allege the

13 defendants did not "provide exculpatory evidence in its due weight" in their jurisdictional report

14 to the court.  FAC ¶ 53.  They allege the defendants "purposefully withheld evidence and

15 fabricated lies to uphold the narrative that [Ms. Miroth was an unfit mother," even though she

16 had attended weekly counseling sessions and had kept A.M. away from two family members who

17 had allegedly abused her and A.M.  *Id.* ¶ 55.  According to the complaint, Ms. Miroth's court-

18 appointed attorney did not advocate vigorously on her behalf.  She alleges he did not offer

19 evidence about her negative drug tests or rebut the County's allegations of her drug use, and he

20 "never provided [Ms. Miroth's] counseling reports, parenting classes, or domestic violence victim

21 /////

---

[3] At a detention hearing, a juvenile court receives evidence about the need for a child's continued detention.  *See* Cal. Welf. & Inst. Code § 319(a)–(b).  The court must order the child's release absent "a prima facie showing" that (1) the child's circumstances are within those listed in section 300, (2) "the court finds that continuance in the parent's or guardian's home is contrary to the child's welfare," and (3) the child's circumstances fit within at least one of several listed, including "a substantial danger to the physical health of the child or the child is suffering severe emotional damage."  *Id.* § 319(c).

[4] At a jurisdictional hearing, the juvenile court receives evidence to decide "whether the minor is a person described by Section 300" of the state Welfare and Institutions Code.  Cal. Welf. & Inst. Code § 355(a).

class documentation, nor demanded that the COUNTY should be making collateral contact with aforesaid individuals/agencies . . . ."  *Id.* ¶ 54.

On August 18, 2018, Ms. Miroth gave birth to S.M.  *Id.* ¶ 66.  Three days later, the County obtained a protective custody warrant for S.M.  RJN Ex. G, "SM Protective Custody Warrant," ECF No. 38-1.  After a series of petitions and hearings similar to those held with respect to A.M., the County also removed and detained S.M.  *See* FAC ¶¶ 67, 76, 80; RJN Ex. H, "SM Dependency Petition," ECF No. 38-1; RJN Ex. I, "SM Detention Hearing," ECF No. 38-1; RJN Ex. J, "SM Findings and Orders After Detention Hearing," ECF No. 38-1.  The plaintiffs allege the defendants again relied on false claims and withheld exculpatory evidence in S.M.'s case.  *See* FAC ¶¶ 67–81.

The state court then held a jurisdictional hearing for S.M. and a joint dispositional hearing[5] for both A.M. and S.M.  RJN Ex. K, "SM Jurisdictional and AM/SM Disposition Hearing," ECF No. 38-1.  The court found there was a substantial risk S.M. also would be at risk. *Id.* at 148.  The plaintiffs allege the defendants again presented a "one-sided story" and withheld exculpatory evidence, including evidence Ms. Miroth had attended domestic violence group therapy and counseling.  FAC ¶ 81.

In March 2019, the plaintiffs' parental rights were terminated after a permanency hearing.[6]  *See* RJN Ex. O, "AM/SM Permanency Hearing," ECF No. 38-1.  Again, in this hearing, the plaintiffs allege the defendants mispresented the evidence, and again they allege Ms. Miroth's appointed attorney left the claims against her unrebutted.  *Id.* ¶¶ 90–93.  Ms. Miroth appealed unsuccessfully to the California Court of Appeal and California Supreme Court.  *See generally*

---

[5] At a dispositional hearing, the juvenile court hears evidence on "the proper disposition to be made of the child."  Cal. Welf. & Inst. Code § 358(a).  The court must "make a finding as to whether the social worker has exercised due diligence in conducting the investigation . . . to identify, locate, and notify the child's relative . . . " whenever a child is removed from a parent's custody.  *Id.* § 358(b).

[6] At a permanency hearing, the juvenile court can make findings and orders to terminate the rights of the parents "in order to provide stable, permanent homes for [the] children."  Cal. Welf. & Inst. Code § 366.26 (b).  The court cannot terminate parental rights if "[a]t each hearing at which the court was required to consider reasonable efforts or services, the court has found that reasonable efforts were not made or that reasonable services were not offered or provided."  *Id.* § 366.26 (c)(2).

*A.M. v. P.M.*, 2020 Cal. App. Unpub. LEXIS 2285 (Apr. 13, 2020); *In re A.M.*, 2020 Cal. LEXIS 5314, at *1 (July 29, 2020).  She alleges the "appellate court record was replete with a false, one-sided, and a skewed version of the facts."  FAC ¶ 90.

After the state court proceedings concluded, the plaintiffs filed this action.  *See generally* Compl., ECF No. 1.  Their operative complaint includes the following claims against Trinity County and its social workers under 42 U.S.C. § 1983 and state law:

- violation of the right to familial association under the Fourth and Fourteenth Amendments (claims 1-3),

- municipal liability under 42 U.S.C. § 1983 (claim 4),

- violation of the right to free speech (claim 5),

- violation of the Unruh Civil Rights Act, under state law (claim 6),

- violation of the right to have effective assistance of counsel (claim 7),

- fraud (claim 8),

- intentional infliction of emotional distress (claim 9),

- negligent infliction of emotional distress (claim 10),

- declaratory and injunctive relief (claim 12), and

- fraud upon the court (claim 13).

*See generally* FAC.[7]  The plaintiffs allege they have suffered "severe and enduring emotional distress."  *Id.* ¶ 100.  They seek declaratory judgment, compensatory damages, punitive damages, attorney costs and fees, and an order reversing the termination of their parental rights.  FAC at 71–72.

The defendants move to dismiss for lack of jurisdiction and for failure to state a claim on which relief can be granted.  *See generally* Mot., ECF No. 34; Mot. Mem., ECF No. 34-1.  Briefing is now complete.  *See generally* Opp'n; Reply, ECF No. 42.  The court held a videoconference hearing on October 7, 2022.  *See* Min. for Mot. Hr'g, ECF No. 47.  Shannon Wilhite appeared for the plaintiffs, and William Bittner appeared for the defendants.  *Id.*

---

[7] The plaintiff's eleventh claim is one for defamation against a separate defendant who is not a party to this motion.  *See* FAC ¶ 184.

6

1    Plaintiffs do not oppose the dismissal of their Fourth Amendment claims and their fifth, sixth,

2    seventh, and twelfth claims, but otherwise oppose the motion.  *See* Opp'n at 39.[8]  At oral

3    argument, the plaintiffs reaffirmed their non-opposition to dismissal of these claims.  The court

4    thus grants the motion to dismiss these claims **without leave to amend.**  It addresses the balance

5    of the motion below.

6    **III.   LEGAL STANDARD**

7         A district court must dismiss an action if it "determines at any time that it lacks subject-

8    matter jurisdiction."  Fed. R. Civ. P. 12(h)(3).  An "objection that a federal court lacks subject-

9    matter jurisdiction . . . may be raised . . . at any stage in the litigation . . . ."  *Arbaugh v. Y&H*

10   *Corp.*, 546 U.S. 500, 506 (2006).

11   **IV.   ANALYSIS**

12        **A.     The *Rooker-Feldman* Doctrine**

13        The defendants argue the plaintiffs' first, second, third, fourth, eighth, and thirteenth

14   claims are barred under the *Rooker-Feldman* doctrine.  *See* Mot. Mem. at 15–17 (relying on

15   *Ismail v. County of Orange*, 693 F. App'x 507 (9th Cir. 2017) (unpublished), in invoking the

16   doctrine); Reply at 3–5.  The *Rooker-Feldman* doctrine "prohibits a federal district court from

17   exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court

18   judgment."  *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004).  "'This doctrine

19   applies even where the challenge to the state court decision involves federal constitutional issues,'

20   including section 1983 claims."  *Benavidez v. County of San Diego*, 993 F.3d 1134, 1142–43 (9th

21   Cir. 2021) (quoting *Doe & Assocs. Law Offs. v. Napolitano*, 252 F.3d 1026, 1029 (9th Cir.

22   2001)).  A complaint is a de facto appeal when the plaintiff "asserts as a legal wrong an allegedly

23   erroneous decision by a state court, and seeks relief from a state court judgment based on that

24   decision."  *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003).  However, if "a federal plaintiff

---

[8] The court **accepts the plaintiff's late filing**, resolving ECF No. 41.  *See* Fed. R. Civ. P. 6(b); Local Rule 144(c).  The court notes plaintiffs' opposition exceeds the page limits imposed by this court's standing order.  Oversized briefs may lead to the imposition of sanctions in the future.

1   asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker–Feldman*

2   does not bar jurisdiction." *Id.*

3        A "corollary" to this distinction is the rule of "extrinsic fraud." *Benavidez*, 993 F.3d at

4   1143.  "Extrinsic fraud is conduct which prevents a party from presenting his claim in court."

5   *Kougasian*, 359 F.3d at 1140 (quoting *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir.  1981)).

6   "Extrinsic fraud on a court is, by definition, not an error by that court.  It is, rather, a wrongful act

7   committed by the party or parties who engaged in the fraud." *Id.* at 1141.  "It has long been the

8   law that a plaintiff in federal court can seek to set aside a state court judgment obtained through

9   extrinsic fraud." *Id.*  Extrinsic fraud is distinguished from intrinsic fraud, which is conduct that

10   goes "to the very heart of the issues contested in the state court action," such as claims that an

11   adverse party misrepresented the evidence or facts.  *Green v. Ancora-Citronelle Corp.*, 577 F.2d

12   1380, 1384 (9th Cir. 1978).

13        **B.**    **The Plaintiffs' First, Second, Third, and Thirteenth Claims are De Facto**
14              **Appeals of State Court Judgments**

15        The defendants argue plaintiffs' first, second, third, and thirteenth claims amount to a de

16   facto appeal of state court judgments because the plaintiffs allege "they were harmed by the

17   juvenile court's erroneous rulings" and "seek relief from the juvenile court's decision."  Mot.

18   Mem. at 16.  The court agrees, given the manner in which plaintiffs have pled their claims at this

19   point.  Specifically, the plaintiffs seek relief from state court judgments.  Although they do not

20   explicitly contend the state courts made erroneous rulings, that is the thrust of their allegations.

21   Their first, second, and third claims allege violations of rights to familial association by the

22   removal of A.M. and S.M. and their continued detention.  FAC ¶¶ 103, 110, 118.  Plaintiffs seek

23   reversal of the order terminating their parental rights.  *Id.* at 72.  Similarly, in their thirteenth

24   claim, the plaintiffs seek to "set aside" the state court judgment terminating their parental rights,

25   *id.* at 68, and state the "only just remedy is to reinstate their parental rights . . . and make any

26   other orders regarding the reunification of the minors to their parents as this Court deems

27   necessary and appropriate," *id.* ¶ 213.  Plaintiffs allege essentially that the state courts wrongly

1    relied on unreliable evidence. *See id.* ¶¶ 105–121, 210–212. They thus have pled a de facto

2    appeal.

3         The plaintiffs contend their case in not in actuality a de facto appeal because they are not

4    asserting the juvenile court made an erroneous ruling; rather, they are asserting "legal wrongs by

5    an adverse party." Opp'n at 11. Similarly, they claim they had no chance to litigate their fraud

6    claims in state court because "the fraud was internal in its origin" and "hidden." *Id.* at 13; *see*

7    *also id.* at 18–19 ("Defendants [sic] fraudulent acts were hidden outside of the knowledge and/or

8    ability for Plaintiffs to understand or recognize.").

9         The plaintiffs' factual allegations and the state court records before the court do not

10   support plaintiffs' arguments. For example, according to the complaint, the defendants painted a

11   misleading picture of Ms. Miroth's drug use and the lack of stability in her home. *See, e.g.*, FAC

12   ¶¶ 50–51. The plaintiffs do not explain how the truth of these matters was hidden from them.

13   Ms. Miroth was present for the court proceedings and so would have known at the time if the

14   defendants' accounts of her drug use and home life were false. *See* RJN Ex. C; RJN Ex. E; RJN

15   Ex. I; RJN Ex. K; RJN Ex. N "Permanency Hearing Transcript," ECF No. 38-1. She could have

16   rebutted any false accusations by offering her first-hand testimony, and in fact the state court

17   transcripts show she had the opportunity to do so and availed herself of the opportunity. *See, e.g.*,

18   RJN Ex. K at 95:26–96:4 (stating "I've never had a drug issue and never had a dirty drug test . . . .

19   they were trying to say I had a drug problem, and I had a drug addiction, and I had a dirty drug

20   test from the hospital, which I did not"); RJN Ex. I at 66:24–27 (testifying "I have done

21   reasonable efforts to prevent any dangers and stuff with my daughter, or my son now. And CPS

22   has not made reasonable efforts to prevent the - - from taking my son from me"); RJN Ex. I at

23   67:23–68:1 (affirming "[m]y Counselor . . . will confirm, and already confirmed, that I have

24   addressed the matters that affected my daughter and that could affect my son. And that she -- in

25   her professional opinion, that I am capable, and the environment is very well stable for both

26   children"); Ex. N at 284:5–11 (testifying "I know I have a past, and it's from 17 years ago. I did

27   make a mistake. A horrible mistake. And I have insights to that. And I have addressed concerns

28   as DV, to counseling, to -- I mean, everything. Everything. I have insight. My counselor even

1  says I have insight now; that my children would be safe with me").  The juvenile court heard

2  evidence about the safety of Ms. Miroth's home.  *See, e.g.*, RJN Ex. C at 18:3–20:27.  Therefore,

3  this court could not ultimately rule in the plaintiffs' favor "without holding that the state court had

4  erred"; the alleged fraud was intrinsic.  *Napolitano*, 252 F.3d at 1030.  Put another way, the

5  defendants' alleged misrepresentations go "to the very heart of the issues contested in the state

6  court action," namely were A.M. and S.M. at risk of harm if they were not removed from their

7  parents' home?  *See Green*, 577 F.2d at 1384.

8       The plaintiffs also plead that Ms. Miroth's attorney could have refuted, but did not, the

9  defendants' allegedly misleading claims.  *See* FAC ¶¶ 54, 89, 92–93, 146–147, 149–151.  For

10  example, the plaintiffs allege:

11          [Ms. Miroth's counsel at the state court proceedings] never provided the court with
12          [Ms. Miroth's] evidence of her negative drug tests dating back to 2001, or even
13          attempted to defeat the false allegation of [Ms. Miroth's] alleged methamphetamine
14          use used repeatedly by CWS in court, showing that she has no arrests or convictions
15          due to possession of any controlled substances, use/under the influence of a
16          controlled substance, or DUIs.  [Counsel] never provided [Ms. Miroth's] counseling
17          reports, parenting classes, or domestic violence victim class documentation, nor
18          demanded that the COUNTY should be making collateral contact with aforesaid
19          individuals/agencies, or called witnesses who could provide an alibi for [Ms.
20          Miroth] regarding CWS's stalking accusations.  [Counsel] himself did not describe
21          [Ms. Miroth's] process in counseling by communicating with [Ms. Miroth's]
22          counselor Jill Chipman, or Angel Norton at the Human Response Network in
23          Weaverville where [Ms. Miroth] took her parenting and DV victim classes.
24          [Counsel] by his omissions perpetuated [the defendants'] false narrative, as a
25          knowing omission and as such was ineffective in his counsel.

26  *Id.* ¶ 54.  This allegation is at odds with the plaintiffs' claim it was the defendants who prevented

27  them from making their case.  In that respect, this case cannot be meaningfully distinguished from

28  *Ismail v. County of Orange*, *supra*.  In *Ismail*, the plaintiff similarly alleged social workers had

29  prevented her from making her case in state court dependency proceedings, but the record showed

30  otherwise; her fraud claims had already been litigated in state court.  *See* 693 F. App'x at 510.  So

31  too here: no factual allegations permit the court to infer it was the defendants who prevented the

32  plaintiffs from litigating their claims in state court.  For the same reasons, this case is

33  distinguishable from *Kougasian*.  *See* 359 F.3d at 1140.  In *Kougasian*, the federal-court plaintiff

34  alleged the defendants had submitted a false declaration at the last minute and thwarted the

1   plaintiff's attempts to schedule a deposition or interview. *See id.* This was extrinsic fraud. *See*

2   *id.* The plaintiffs make no similar allegations here.

3         **C.**    **The Plaintiffs' Fourth and Eighth Claims are Inextricably Intertwined with**

4                        **Their De Facto Appeal of State Court Judgments**

5         "Once a federal plaintiff seeks to bring a forbidden de facto appeal," as plaintiffs do here,

6   "that federal plaintiff may not seek to litigate an issue that is 'inextricably intertwined' with the

7   state court judicial decision from which the forbidden de facto appeal is brought." *Noel*, 341 F.3d

8   at 1158. The defendants argue two of the plaintiffs' remaining claims are inextricably intertwined

9   with their de facto appeal. *See* Mot. Mem. at 16–17; Reply at 5. The court agrees.

10         The plaintiffs' fourth claim alleges the County is liable under 42 U.S.C. § 1983. To

11   prevail on that claim, the plaintiffs must show the County violated their constitutional rights by

12   removing A.M. and S.M. *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

13   The fourth claim thus challenges the state court decisions to remove A.M. and S.M. and is

14   inextricably intertwined with the prohibited de facto appeal of a state court judgment. *See*

15   *Napolitano*, 252 F.3d at 1030 ("Where the district court must hold that the state court was wrong

16   in order to find in favor of the plaintiff, the issues presented to both courts are inextricably

17   intertwined.").

18         The plaintiffs' eighth claim is for fraud. Their allegations here are "inextricably

19   intertwined with the state court rulings that [plaintiffs] ha[ve] de facto appealed because those

20   rulings relied in part on the social workers' reports and testimony." *Ismail*, 693 F. App'x at 510;

21   *see also JQ.H by & through Thomas v. County of San Diego*, No. 18-924, 2021 WL 8014326, at

22   *4 (S.D. Cal. Jan. 28, 2021) (finding plaintiff's allegations defendant submitted "false, fraudulent

23   and misleading information," "directly challenge the state court's jurisdictional findings and raise

24   issues that are 'inextricably intertwined' with the juvenile dependency proceeding").

25         It is possible that with amended factual allegations, the plaintiffs could plead claims that

26   do present allegations this court could entertain. Their first, second, third, fourth, eighth and

27   thirteenth claims are thus **dismissed with leave to amend** if possible within the confines of Rule

11. *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (amendments should normally be permitted if factual allegations could cure deficiencies).

### D.     Remaining State Law Claims

Plaintiffs' remaining claims arise under state law.  FAC ¶¶ 165, 169–170.  A district court "may decline to exercise supplemental jurisdiction" if it has "dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3)).  The court declines to exercise supplemental jurisdiction over these state law claims at this time.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").  If the plaintiffs amend their complaint to assert claims over which this court has jurisdiction, they may again invoke this court's supplemental jurisdiction over any related state law claims.

## V.     CONCLUSION

For the reasons above, the court **grants defendants' motion to dismiss** the plaintiffs' Fourth Amendment claims as well as the fifth, sixth, seventh and twelfth causes of action **without leave to amend.**  The court further **grants defendants' motion to dismiss** plaintiffs' first, second, third, fourth, eighth, ninth, tenth and thirteenth claims **with leave to amend.**  Any second amended complaint must be filed **within twenty-one days.**

This order resolves ECF Nos. 34 and 41.

IT IS SO ORDERED.

DATED:  October 27, 2022.

CHIEF UNITED STATES DISTRICT JUDGE