UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Patricia Miroth & Stanley Miroth, | No. 2:22-cv-00460-KJM-JDP |
| Plaintiffs, | ORDER |
| v. | |
| County of Trinity, et al., | |
| Defendants. | |

Plaintiffs Patricia and Stanley Miroth bring a second amended complaint against Trinity County and several of its employees[1] alleging defendants wrongfully deprived them of their parental rights. Defendants move to dismiss. The court held a hearing on the motion on February 17, 2023. Serena Warner appeared for defendants. Mins. Hr'g, ECF No. 63. No attorney appeared on behalf of plaintiffs. *Id.*[2] Although no attorney appeared for plaintiffs, the court decides the motion on the merits based on the parties' briefs. For the reasons below, the court **grants the motion.**

---

[1] The individual defendants are social workers Liz Hamilton, Mario Angelone, Nicole Hays Bradford, Allison Ballard, Megan Scalzo (formerly Sholty-Scalzo), Angela Berglund and Ashley Poquette. *See* Second Am. Compl. (SAC) ¶¶ 15–21, ECF No. 50.

[2] The court denied the parties' request to appear by video teleconferencing under Local Rule 174, which was belatedly filed the day before the motion hearing, for noncompliance with the court's standing order. *See* Min. Order, ECF No. 61.

**I.      BACKGROUND**

The claims in this case arise from the removal from plaintiffs' custody of two minor children, A.M. and S.M., and from the related termination of plaintiffs' parental rights. *See generally* SAC. The court has thoroughly summarized the facts of this case in its previous order granting a motion to dismiss. *See* Prior Order, ECF No. 48. Plaintiffs bring nearly identical allegations in this amended complaint. *See* First Am. Compl. (FAC), ECF No. 29; *cf. generally* SAC. For purposes of resolving this motion, the court assumes all factual allegations are true and construes them in the light most favorable to plaintiffs. The court also takes judicial notice of the state court proceedings, including protective custody warrants, juvenile dependency petitions, hearing transcripts of dependency proceedings, and findings and orders from the dependency proceedings. *See Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012); Prior Order at 2.

In February 2018, the County received reports of Ms. Miroth's stepfather, a registered sex offender, living in the same home with A.M. and Ms. Miroth, and additional reports alleging emotional abuse and domestic violence in the home. SAC ¶¶ 27, 29–30, 35, 40. For example, the County "received a referral alleging emotional abuse of the child, A.M., by the parents due to the parents getting into a physical and verbal altercation." *Id.* at ¶ 29. After investigating the reports of neglect and abuse, the County obtained a warrant to remove A.M. from plaintiffs' custody. *Id.* ¶¶ 27–42; A.M. Protective Custody Order, Bittner Decl. Ex. A, ECF No. 38-1. The state juvenile court held a detention hearing and jurisdictional hearing for A.M., and determined the removal and detention of A.M. were necessary. *See* Findings and Orders After A.M. Detention Hr'g at 28, Bittner Decl. Ex. D;[3] *see also* A.M. Detention Hr'g Tr. at 20:28–21:5, Bittner Decl. Ex. C; A.M. Jurisdictional Hr'g Tr. at 41:21–27, Bittner Decl. Ex. E; Findings and Orders After A.M. Jurisdictional Hr'g, Bittner Decl. Ex. F.

On August 18, 2018, Ms. Miroth gave birth to S.M., SAC ¶ 78, and the County obtained a protective custody warrant for him, *id.* ¶ 82; S.M. Protective Custody Warrant, Bittner Decl. Ex.

---

[3] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

G.  After a series of petitions and hearings similar to A.M.'s, the County removed and detained S.M.  *See* SAC ¶¶ 84, 86, 88–92; *see also* S.M. Detention Hr'g Tr., Bittner Decl. Ex. I; Findings and Orders After S.M. Detention Hr'g, Bittner Decl. Ex. J.  The state court held a jurisdictional hearing for S.M. and a joint dispositional hearing for both A.M. and S.M.  *See* SAC ¶ 100; S.M. Jurisdictional Hr'g and A.M. & S.M. Joint Dispositional Hr'g Tr., Bittner Decl. Ex. K.  The court ultimately found there was a substantial risk S.M. would be neglected in the same way A.M. had been.  S.M. Jurisdictional Hr'g and A.M. & S.M. Joint Dispositional Hr'g Tr. at 148:6–11.  The court then found reunification services would not be in the best interest of A.M. or S.M., and set the matter for a permanency hearing.  *Id.* at 238:23–239:5; *see also* Findings and Orders After A.M. Dispositional Hr'g, Bittner Decl. Ex. L; Findings and Orders after S.M. Dispositional Hr'g, Bittner Decl. Ex. M.  In March 2019, the court terminated plaintiffs' parental rights after a permanency hearing.  *See* A.M. & S.M. Permanency Hr'g Tr. at 295:13–14, Bittner Decl. Ex. N.

Plaintiffs allege defendants committed perjury, deceived and misled the court, and acted fraudulently during all stages of the state juvenile court proceedings to create a false narrative about plaintiffs and to deprive them of their parental rights.  *See generally* SAC.  Specifically, plaintiffs allege defendants deliberately or recklessly made false statements or omissions to deprive them of their parental rights by: 1) falsely stating in the protective custody warrants and during the state court proceedings that defendants provided services, when in fact they did not provide services or other assistance, and did not develop a safety plan for the family or consider alternatives to removal, *see, e.g.*, *id.* ¶¶ 34, 38, 41–42, 49, 55–56, 62, 79, 81; 2) misrepresenting the termination of Ms. Miroth's parental rights as to her five prior children by not informing the court the children were removed over fourteen years ago, *see, e.g.*, *id.* ¶¶ 36, 53–54, 75, 90, 94, 96; 3) falsely stating Ms. Miroth used drugs, *see, e.g.*, *id.* ¶¶ 52, 55, 65, 73, 101; 4) withholding exculpatory evidence, *see, e.g.*, *id.* ¶¶ 59, 84, 86; and 5) lying to the court by representing plaintiffs did not understand the nature of their acts, did not learn from past mistakes and did not make progress towards remedying the causes that led to the removal of A.M. and S.M., when in fact, there was evidence plaintiffs were making progress, *see, e.g.*, *id.* ¶¶ 36, 46, 69, 83, 105.

In addition to all of defendants' alleged deception, plaintiffs claim the case is "wrought with [Ms. Miroth's] not having representation or having poor representation." *Id.* ¶ 97. Ms. Miroth alleges she was unable to "vindicate her rights as she was appointed several different attorneys who submitted prior to speaking with her, did not meet with her outside of court and did not give her the report until the day of the hearing." *Id.* ¶ 50.[4] For example, plaintiffs allege one of Ms. Miroth's court appointed attorneys failed to provide the court with evidence of her negative drug tests, counseling reports, parenting class and domestic violence victim class documentation and other evidence that could have overcome defendants' false story about plaintiffs. *Id.* ¶ 61. Another attorney "submitted as to the jurisdiction report on behalf of [Ms. Miroth], without speaking to [her]." *Id.* ¶ 75. "To complicate matters further, for the three hearings for both A.M. and S.M., detention, jurisdiction, and disposition there was [sic] three different judges." *Id.* ¶ 98. Plaintiffs ask, "[h]ow could they keep track of whether or not CWS workers were acting lawfully?" *Id.*

Ms. Miroth appealed unsuccessfully to the California Court of Appeal and California Supreme Court. *See generally A.M. v. P.M.*, 2020 Cal. App. Unpub. LEXIS 2285 (Apr. 13, 2020); *In re A.M.*, 2020 Cal. LEXIS 5314, at *1 (July 29, 2020). After the state court proceedings concluded, plaintiffs filed their complaint in this court. Compl., ECF No. 1; *see also* FAC. In its prior order, the court dismissed eight of the claims with leave to amend while dismissing four claims without leave to amend. Prior Order at 12.

Plaintiffs filed a second amended complaint alleging the following seven claims against defendants:

> (1) violation of rights to familial association for the removal of A.M. under the Fourteenth Amendment and 42 U.S.C. § 1983 (claim one);
>
> (2) violation of rights to familial association for the removal of S.M. under the Fourteenth Amendment and 42 U.S.C. § 1983 (claim two);

---

[4] From the chronology of the operative complaint, it appears the hearing plaintiffs are referring to is A.M.'s detention hearing.

4

       (3) violation of rights to familial association for the continued detention of A.M. and S.M. under the Fourteenth Amendment (claim three);

       (4) *Monell* liability against defendants County of Trinity (claim four);

       (5) fraud (claim eight);

       (6) intentional infliction of emotional distress (claim nine); and

       (7) negligent infliction of emotional distress (claim ten).

*See generally* SAC.[5] Defendants move to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim. Mot., ECF No. 51. Plaintiffs oppose, Opp'n, ECF No. 53, and defendants have replied, Reply, ECF No. 54. Plaintiffs also have filed an unauthorized response to the reply. Resp., ECF No. 55; *see* E.D. Cal. L.R. 230(m) ("After a reply is filed, no additional memoranda, papers, or other materials may be filed without prior Court approval [unless otherwise stated]."). The court will consider the response in deciding this motion because the court finds defendants would not be prejudiced by it.

## II.   ROOKER-FELDMAN DOCTRINE

### A.   Legal Standard

A district court must dismiss an action if it "determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3). An "objection that a federal court lacks subject-matter jurisdiction . . . may be raised . . . at any stage in the litigation . . . ." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

The *Rooker-Feldman* doctrine "prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004). "'[T]his doctrine applies even where the challenge to the state court decision involves federal constitutional issues,' including section 1983 claims." *Benavidez v. County of San Diego*, 993 F.3d 1134, 1142 (9th Cir. 2021) (quoting *Doe & Assocs. Law Offs. v. Napolitano*, 252 F.3d 1026, 1029 (9th Cir. 2001)). A complaint is a de facto

---

[5] The court previously dismissed claims five through seven without leave to amend. *See* Prior Order at 7; SAC at 58.

appeal when it satisfies a two-part test: a plaintiff "asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003).

First, if a federal plaintiff "asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction." *Id.* at 1164. The Ninth Circuit has not held the alleged act or omission must be criminally illegal. *See Benavidez*, 993 F.3d at 1143 (finding *Rooker-Feldman* did not bar claims alleging misrepresentation by social workers caused state court to authorize medical examinations without parents' knowledge or consent). By definition, a plaintiff alleging extrinsic fraud "is not alleging a legal error by the state court . . . ." *Kougasian*, 359 F.3d at 1141. This is because "[e]xtrinsic fraud on a court is, by definition, not an error by that court. It is, rather, a wrongful act committed by the party or parties who engaged in the fraud." *Id.* at 1141. "Extrinsic fraud is conduct which prevents a party from presenting his claim in court." *Id.* at 1140 (quoting *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981)). Extrinsic fraud is distinguished from intrinsic fraud, which is conduct that goes "to the very heart of the issues contested in the state court action." *Green v. Ancora-Citronelle Corp.*, 577 F.2d 1380, 1384 (9th Cir. 1978).

Second, if a plaintiff's claim does not seek relief from or reversal of the state court's orders, *Rooker-Feldman* does not serve as a jurisdictional bar to the claim in federal district court. *Benavidez*, 993 F.3d at 1143. Courts in the Ninth Circuit "must pay close attention to the *relief* sought by the federal-court plaintiff." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003) (emphasis in original) (citation omitted).

**B.   Plaintiffs' First, Second and Third Claims are Prohibited De Facto Appeals of State Court Judgments**

The court previously dismissed plaintiffs' first, second and third claims under *Rooker-Feldman,* with leave to amend. Prior Order at 8. The court found the thrust of plaintiffs' prior allegations was that the state courts made erroneous rulings and plaintiffs sought the reversal of the state court rulings terminating their parental rights. *Id.* at 8–10. Here, plaintiffs have amended their complaint to remove any mention of reversing the termination of plaintiffs'

6

parental rights, reinstating plaintiffs' parental rights and reunifying plaintiffs with their children, along with eliminating any allegations of extrinsic fraud. *See generally* SAC; Opp'n at 5; *cf.* FAC at 71–72 ("Plaintiffs respectfully request this Court . . . [r]everse the termination of [plaintiffs'] parental rights, and make orders to reunify children and parents . . . ."). Plaintiffs also have voluntarily dismissed their claim for fraud upon the court and request to set aside the state court judgment terminating plaintiffs' parental rights. SAC at 65–66. Plaintiffs argue they are no longer seeking relief from the state court decisions removing their children and terminating their parental rights. *See* SAC at 66; Opp'n at 5 ("There is no evidence that plaintiffs allege or believe that the state court made a wrongful ruling."). Notwithstanding this argument, and plaintiffs' attempt to artfully plead around *Rooker-Feldman*, the court finds this action is a forbidden de facto appeal because plaintiffs still essentially ask the court to review the rulings of the state court and find they were in error. The court reaches this conclusion having considered the two relevant factors.

First, the court finds plaintiffs assert the alleged errors of the state court as their legal injury. As defendants point out, plaintiffs do not allege new facts or arguments to support their contentions that defendants violated their constitutional rights. *See* Mot. at 5; *see generally* SAC; Reply at 2. Plaintiffs argue they are not alleging a legal wrong by the state court, but rather, a legal wrong by the individual defendants. Opp'n at 6; Resp. at 2. Plaintiffs concede the state court ruled correctly based on the evidence it had before it, and "had the court had access to the truth[,] [it] would have ruled differently." Opp'n at 6. The thrust of plaintiffs' allegations has not changed, i.e., that the state court made an erroneous ruling. Unlike before, plaintiffs explicitly state they are no longer alleging extrinsic fraud. *Id.* at 5. Rather, they argue they "no longer need to show they were prevented from discovering the extrinsic fraud due to the social worker actions because they are not requesting relief in the form of a reversal of the state court decision." *Id.* But their withdrawal of the extrinsic fraud argument on which they relied before is dispositive here and undercuts their arguments. That is because any fraud plaintiffs now allege goes "to the very heart of the issues contested in the state court action," i.e., was the removal and continued detention of A.M. and S.M. necessary? *Green*, 577 F.2d at 1384.

Moreover, by removing their allegations of extrinsic fraud, plaintiffs are now directly challenging the state court decisions. The state court heard evidence regarding defendants' alleged misrepresentation, including evidence on whether plaintiffs received services from social workers. For example, Ms. Miroth testified during the dispositional hearing that she was not referred to services by social workers. S.M. Jurisdictional Hr'g and A.M. & S.M. Joint Dispositional Hr'g Tr. at 187:20–22; 191:6–9. Mr. Miroth also testified he was not offered any services. *Id.* at 202:3–9; *see id.* 225:17–24. Additionally, in closing, Ms. Miroth's counsel emphasized social workers did not provide plaintiff with services. *Id.* at 227:12–228:3, 229:26–230:3. Second, counsel for plaintiffs also addressed the fact the removal of their other children was over fourteen years ago. *Id.* at 93:19–24; 224:1–4. Third, the issue of Ms. Miroth's alleged drug use was also raised. *See id.* at 225:2–9, 230:19–25 (noting "it was found true" Ms. Miroth had substance abuse during state court proceedings as to A.M. and S.M.'s sister). Ms. Miroth also testified she used methamphetamine when she was younger. *Id.* at 95:25–26. And finally, the state court heard evidence of plaintiffs making progress towards remedying the causes that led to the removal of their children. For example, the court heard evidence Ms. Miroth attended parenting classes and domestic violence meetings. *Id.* at 192:28–193:13. The court also heard testimony from Ms. Miroth's therapist describing her counseling sessions and opining Ms. Miroth's parental rights should not be terminated. *Id.* at 152:12–161:15. In light of all the evidence before it, the state court concluded the continued detention of the children was necessary. *Id.* at 239:21–28. Here, plaintiffs are in essence arguing the state court erred by incorrectly weighing the evidence before it. In order for the court to find for plaintiffs, the court would need to conclude the state court's decisions were wrong, which it cannot do.

This case is further distinguishable from *Benavidez*, in which the defendants allegedly prevented the plaintiffs from learning about an alleged illegal medical exam until after it had already happened. 993 F.3d at 1143–44. In *Benavidez*, the plaintiffs sought to hold the defendants liable under section 1983 for unconstitutional judicial deception, and not for the removal and detention of their children. *Id.* at 1140. There, the plaintiffs alleged the defendants unlawfully obtained an order authorizing medical examinations of the plaintiffs' minor children

8

without their consent and did not give the plaintiffs an opportunity to object to the authorization or be present during the examinations. *Id.* at 1140–41.  Here, all of the alleged fraud, misrepresentation and omissions  -- regarding the provision of services, drug use, counseling, removal of children over fourteen years ago, progress made by plaintiffs -- were matters brought to the state court's attention as explained above, or were matters within plaintiffs' knowledge.  Plaintiffs were present during all the state court proceedings.  While they are dissatisfied with their attorneys' representations, they do not deny they were represented by counsel.  Thus, they had the opportunity to present their claims during the state court proceedings and challenge or refute defendants' alleged misrepresentations. *Green*, 577 F.2d at 1384 ("[Plaintiffs] clearly had an opportunity to present their claim in state court and could have protected against the alleged fraud since the matters which are alleged to have been fraudulently misrepresented by [defendants] were certainly within the knowledge of [plaintiffs].").  Even if plaintiffs were to claim they did not have the opportunity to do so, it was not defendants who prevented plaintiffs from challenging defendants' alleged misrepresentations.  Rather, it would have been plaintiffs themselves, through their own actions, or their attorneys.

      Second, the court finds plaintiffs seek relief from the state court judgments.  Plaintiffs are seeking damages to remedy the consequences of the state court proceedings—i.e., the removal and continued detention of their children.  As such, plaintiffs are seeking relief from the consequences of those judgments.  Thus, even if plaintiffs are allegedly no longer seeking the reversal of the state court decisions and requesting only damages, in effect, plaintiffs are asking the court to scrutinize the decisions of the state courts and find they were in error, which the court is not permitted to do. *See Cooper v. Ramos*, 704 F.3d 772, 782 (9th Cir. 2012) ("[Plaintiff's] prayer for relief in the form of monetary and punitive damages . . . is contingent upon a finding that the state court decision was in error . . . It is precisely this sort of horizontal review of state court decisions that the *Rooker–Feldman* doctrine bars."); *see, e.g.*, *Zayas v. Messit*, No. 20-0747, 2021 WL 3675033, at *5 (W.D. Wash. Aug. 19, 2021) ("To the extent [plaintiff] seeks monetary damages for alleged constitutional violations, her claims amount to a de facto appeal because, to

find in her favor, this Court would have to review the removal and dependency decisions and find they were wrong.").

This case exemplifies one "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The broad purpose of *Rooker-Feldman* "is to protect state judgments from collateral federal attack" unless such an attack is otherwise provided for. *Napolitano*, 252 F.3d at 1030. "Because district courts lack power to hear direct appeals from state court decisions, they must decline jurisdiction whenever they are 'in essence being called upon to review the state court decision.'" *Id.* (quoting *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 n.16 (1983)). Here, the court is essentially being called to review the state juvenile court decisions to remove A.M. and S.M. from plaintiffs' custody and to terminate plaintiffs' parental rights. Accordingly, the court finds plaintiffs' first, second and third claims are barred by *Rooker-Feldman*.

### C. Plaintiffs' Fourth and Eighth Claims are Inextricalbly Intertwined with Their De Facto Appeal of State Court Judgments

"Once a federal plaintiff seeks to bring a forbidden de facto appeal . . . that federal plaintiff may not seek to litigate an issue that is 'inextricably intertwined' with the state court judicial decision from which the forbidden de facto appeal is brought." *Noel*, 341 F.3d at 1158. Here, as the court explained in its prior order, plaintiffs' *Monell* claim and fraud claim, which are nearly identical to what they pled in their first amended complaint, are inextricably intertwined with the claims challenging the state court decisions to remove and detain A.M. and S.M. *See* Prior Order at 11; *see also* SAC.

### III. STATE LAW CLAIMS

Plaintiffs' remaining claims arise under state law. SAC ¶¶ 169, 175. A district court "may decline to exercise supplemental jurisdiction" if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3)). The court declines to exercise supplemental jurisdiction over these state law claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715,

726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

IV.   **CONCLUSION**

For the reasons above, the court **grants defendants' motion to dismiss without leave to amend.**  Given the factual allegations and the prior state court proceedings, and plaintiff's having filed now three complaints, the court finds further amendment would be futile.  *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("Although leave to amend should be given freely, a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile.").  The clerk of the court is directed to close this case.

This order resolves ECF No. 51.

IT IS SO ORDERED.

DATED: April 14, 2023.

CHIEF UNITED STATES DISTRICT JUDGE