UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Patricia Miroth, et al.,

               Plaintiffs,

     v.

County of Trinity, et al.,

               Defendants.

No. 2:22-cv-00460-KJM-JDP

ORDER

Plaintiffs Patricia and Stanley Miroth allege Trinity County and several of its employees unconstitutionally took custody of their minor children and permanently terminated their parental rights. As explained in more detail below, the Miroths previously relied on the factual issues underlying their current claims and those issues were decided in a case the parties litigated to a judgment on the merits in the state court system. That litigation precludes the Miroths' federal claims, and the court declines to exercise jurisdiction over their state law claims. The court therefore **dismisses this action without leave to amend**.

I.    **BACKGROUND**

The court assumes the allegations in the Miroths' complaint are true and draws reasonable inferences in their favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The complaint and

1  the pending motion refer extensively to an underlying state court proceeding.[1]  For that reason,

2  the court has taken judicial notice of the records of those proceedings.  *See Harris v. County of*

3  *Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("[Courts] may take judicial notice of undisputed

4  matters of public record, including documents on file in federal or state courts." (citation

5  omitted)).  To be clear, the court has not decided whether the statements in the state court records

6  are true or false, nor whether the witnesses who testified in those proceedings are credible.  The

7  court has referred to the state court records only to ascertain what was litigated and decided.

8          Both this court and the Ninth Circuit Court of Appeals previously have summarized the

9  Miroths' allegations and the state court proceedings.  *See* Order (Apr. 17, 2023) at 2–5, ECF

10  No. 68, *rev'd in part on other grounds and remanded*, 136 F.4th 1141, 1144–46 (9th Cir. 2025);

11  Order (Oct. 28, 2022) at 2–6, ECF No. 48.  Only a brief review of that background information is

12  necessary in this order.  The Miroths are the parents of A.M. and S.M., who are both minors.  136

13  F.4th at 1144.  In February 2018, Trinity County Child Protective Services received a report that

14  A.M. was spending unsupervised time at home with a registered sex offender, a family member

15  named Lonnie Smith, *id.*, as well as reports of emotional abuse and domestic violence in the

16  Miroths' home, *see* Order (Apr. 17, 2023) at 2.  The Miroths allege the county could have created

17  a "safety plan" that "would have established a pathway for the Miroths to improve their home

18  environment and maintain custody of the children," but no plan was prepared.  136 F.4th at 1144–

19  45.  County officials instead "concluded, based on Patricia Miroth's past experiences involving

20  her other children, that [she] was incapable of improving as a parent."  *Id.* at 1145.  S.M. was born

21  after A.M. was taken into the county's custody, and county officials obtained a warrant to take

22  custody of S.M. as well.  *Id.*  Later, after further hearings, the state court permanently terminated

23  the Miroths' parental rights with respect to both A.M. and S.M.  *Id.*  The Miroths pursued an

24  unsuccessful appeal of the state court's decision within the state courts.  *See generally*

---

[1] Several records from these state court proceedings are filed under seal on the docket of this action at ECF No. 38-1.  The underlying state cases are *In re A.M.*, No. 18-JU020 and *In re S.M.*, No. 18FJU027, both of which were filed in the Superior Court for the State of California, County of Trinity.

1   *A.M. v. P.M.*, 2020 Cal. App. Unpub. LEXIS 2285 (Apr. 13, 2020), *review denied*, 2020 Cal.

2   LEXIS 5314 (July 29, 2020).  They then filed this action.  *See generally* Compl., ECF No. 1.

3          In this case, the Miroths allege county officials made several false or misleading

4   statements during the state court proceedings.  Among other things, they allege county officials

5   misrepresented their efforts to help the Miroths maintain custody of their children; falsely or

6   misleadingly described the circumstances in which the Miroths' parental rights had been

7   terminated in the past; falsely claimed that Ms. Miroth used illegal drugs; and wrongly asserted

8   the Miroths did not understand the nature of their actions, had not learned from past mistakes and

9   had not progressed toward remedying the causes of A.M.'s and S.M.'s removals from their

10  custody.  Order (Apr. 17, 2023) at 3 (citing Second Amended Complaint); *see also* 136 F.4th at

11  1145 (summarizing the same allegations).  The Miroths also contend the state court proceedings

12  were unfair because the county did not present certain evidence that was favorable to the Miroths,

13  and they argue Ms. Miroth was at a disadvantage in these proceedings because she was

14  sometimes unrepresented and sometimes represented by attorneys who did not effectively

15  advocate on her behalf.  *See* Order (Apr. 17, 2023) at 4 (citing Second Amended Complaint).

16         In the operative complaint, the Miroths are pursuing seven legal claims.  Their complaint

17  names several defendants, including Trinity County, several county officials, and Debbie Carter,

18  a private party and Mr. Miroth's mother.  In the Miroths' first three claims, they allege the

19  individual county officials deprived them of their rights to familial association in violation of the

20  Fourteenth Amendment and 42 U.S.C. § 1983.  *Id.* at 4–5.  In their fourth claim, they allege the

21  county is liable under § 1983 and *Monell v. Department of Social Services*.  *Id.* at 5 (citing

22  436 U.S. 658 (1978)).  Their three remaining claims—for fraud and the intentional and negligent

23  infliction of emotional distress—each arise under California law.  *See id.*

24         This court previously granted defendants' motion to dismiss this action under the *Rooker–*

25  *Feldman* doctrine, which "prohibits a federal district court from exercising subject matter

26  jurisdiction over a suit that is a de facto appeal from a state court judgment."  *Kougasian v.*

27  *TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004).  The Miroths appealed, and the Ninth Circuit

1    held "the *Rooker–Feldman* doctrine did not deprive [this] court of jurisdiction."  136 F.4th

2    at 1144.  It reversed and remanded the matter for further proceedings.  *Id.*

3          After the matter was remanded, several of the defendants renewed a preclusion argument

4    they had advanced in their previous motion to dismiss.  The court had not reached that argument

5    in its previous order, and it permitted the parties to file supplemental briefs.  *See* Sched. Conf.

6    Mins., ECF No. 86.  The county and the individual officials filed a supplemental brief.  *See*

7    *generally* Defs.' Suppl. Br., ECF No. 87.  These defendants emphasize they are not asking the

8    court to bar any particular "claim," but rather only to preclude further litigation about the

9    "underlying factual issues."  *Id.* at 6.  Ms. Carter is not represented by an attorney in this action.

10   She filed a letter asking this court to "put a final stop" to what she describes as harassing and

11   threatening behavior by the Miroths.  *See* Letter (Aug. 4, 2025), ECF No. 88.  She does not take a

12   position on the other defendants' arguments.  The Miroths did not file a supplemental brief or any

13   other response to the arguments in the defendants' supplemental brief and letter, but they did

14   previously file an unauthorized response to defendants' motion, arguing their claims are not

15   precluded.  *See* Pls.' Resp. to Reply at 3–5, ECF No. 55.  In the interests of deciding the pending

16   motion on the merits, the court has considered the Miroths' previous response, because doing so

17   will lead to no undue prejudice.  The court took the matter under submission without holding a

18   hearing.  *See* Sched. Conf. Mins., ECF No. 86.

19   **II.    DISCUSSION**

20         As summarized above, the court assumes at this stage that the Miroths' factual allegations

21   are true and determines whether those allegations "plausibly give rise to an entitlement to relief"

22   under Federal Rule of Civil Procedure 8.  *Iqbal*, 556 U.S. at 678–79.  At the same time, the court

23   has taken judicial notice of the state court records, and it will not assume the Miroths' allegations

24   are true if they are contradicted by those records.  *See Sprewell v. Golden State Warriors*,

25   266 F.3d 979, 988 (9th Cir.), *as amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

26         The county defendants argue the Miroths cannot pursue their first four claims because the

27   state court has already adjudicated the factual disputes at the heart of those claims.  They argue

28   correctly that this court "must give to a state-court judgment the same preclusive effect as would

4

1  be given that judgment under the law of the State in which the judgment was rendered." *Migra v.*

2  *Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).  One such rule of preclusion is

3  "collateral estoppel," also known as "issue preclusion."  *See Lucido v. Superior Court*, 51 Cal. 3d

4  335, 341 & n.3 (1990).  That rule "precludes relitigation of issues argued and decided in prior

5  proceedings."  *Id.* at 341.  It has several "threshold requirements."  *Id.*  The precluded issue "must

6  be identical to that decided in a former proceeding," and it "must have been actually litigated"

7  and "necessarily decided"; that is, the issue cannot have been "entirely unnecessary to the

8  judgment."  *Id.* at 341–42 (citations omitted).  The previous decision also must have been "final

9  and on the merits," and "the party against whom preclusion is sought must be the same as, or in

10  privity with, the party in the former proceeding."  *Id.* at 341 (citations omitted).  If these

11  "threshold" requirements are established, then the court must consider "the public policies

12  underlying the doctrine before concluding that collateral estoppel should be applied in a particular

13  setting."  *Id.* at 342–43.  The party who contends an issue is precluded bears the burden of

14  demonstrating that is so.  *Id.* at 341.

15      The Miroths were parties to the dependency proceedings in state court, and those

16  proceedings ended in a final judgment on the merits.  The primary questions for this court to

17  answer are thus whether the relevant issues are "identical" and whether those issues were

18  "actually litigated" and "necessarily decided" in state court.  *Id.*  The Miroths' federal claims

19  against the individual county officers (the first three claims) are the natural place to begin.  The

20  court will consider these claims together, as they rest on the same allegations about how county

21  officials deprived the Miroths of their rights by removing A.M. and S.M. from their care and by

22  terminating their parental rights.  *See* Second Am. Compl. ¶¶ 120–51.

23      The Miroths do not argue municipal governments like Trinity County cannot terminate a

24  parent's rights at all or in general.  Their theory of the defendants' wrongdoing is narrower.  They

25  allege employees of Trinity County's Department of Child Protective Services decided from the

26  start that A.M. and S.M. were at risk, then set about to remove them from the Miroths' care,

27  painting a false or misleading picture of the risks the two children faced.  The Miroths'

28  allegations are best understood as falling in three categories.  Each of these categories

corresponds in turn to a single factual "issue" for purposes of the preclusion analysis summarized above.

The first category of allegations focuses on alternatives to the termination of the Miroths' parental rights and their efforts to prevent that outcome. The Miroths allege county officials had an obligation to help them develop a plan to keep A.M. and S.M. safe at home, but did not fulfill that obligation. *See id.* ¶¶ 34–35. The Miroths contend, for example, that county officials should have interviewed them and their children, should have helped remove Mr. Smith (the sex offender) from the Miroths' home, should have offered addiction treatment to Mr. Miroth, and should have scheduled therapy and made other referrals to help the Miroths protect their children. *See id.* ¶¶ 35, 37, 42, 49, 79, 89. The Miroths allege similarly that they affirmatively requested help from county officials but were met with silence or refusals. Ms. Miroth alleges, for example, that she asked county officials to protect her and A.M. from domestic violence, and she alleges the county should have helped her obtain a restraining order and a safe place to stay until the home was safe again, but did not. *See id.* ¶ 39. On a related front, the Miroths allege county officials falsely or misleadingly argued in state court that removing the children from their care was the only viable means of protecting those children. *See id.* ¶¶ 42, 55–60, 62. For example, the Miroths allege county officials falsely contended Ms. Miroth "did not understand the nature of her harm" and "she was incapable of remediating her situation." *Id.* ¶ 46. The truth, the Miroths allege, was that they did understand the need to keep their children safe and had attempted to do so, such as by expelling Mr. Smith, living separately while Mr. Miroth completed an Alcoholics Anonymous program and other treatment, and attending therapy. *See id.* ¶¶ 46–48, 68–69. The Miroths also allege they did in fact undertake these and other remedial efforts, which showed they could and would make their home safe for A.M. and S.M. *See id.* The allegations in this first category raise a straightforward factual issue: was there any alternative to removal of the minor children?

Second, the Miroths allege county officials falsely or misleadingly argued the Miroths had a long history of mistreatment and abuse. County officials stated in court filings, for example, that Ms. Miroth's parental rights over her five previous children had been terminated because she

6

had used methamphetamine, did not adequately supervise them, and had not provided them with adequate medical care. *See id.* ¶¶ 51–54, 100–01. In reality, the Miroths allege, these previous terminations were essentially irrelevant, as they had occurred many years in the past, and they emphasize how Ms. Miroth relinquished her parental rights over four of the five older children voluntarily. *See id.* Ms. Miroth also alleges she "has never used methamphetamines." *Id.* ¶¶ 53, 73. The issue at the heart of this second category of allegations is whether the past was relevant, to what extent and, indirectly, whether county officials misrepresented the record.

Third, the Miroths allege A.M. and S.M. never actually suffered any of the harms that might have justified their removal from the home, and they allege the county never presented evidence to show the children were actually at risk. For example, the Miroths allege A.M.'s "ability to function" was not "impacted" as a result of the domestic violence she witnessed. *See id.* ¶ 40. They allege she never exhibited "severe anxiety, depression, withdrawal or untoward aggressive behavior toward self or others," *id.* ¶ 45, and was "never put into counseling," *id.* ¶ 58; *see also, e.g.*, *id.* ¶¶ 71–72. The Miroths similarly allege there was no evidence to suggest S.M. was at risk because he was born several months after the events that led to A.M.'s removal. *See id.* ¶¶ 92, 94. They also emphasize Ms. Miroth was no longer living in the same home as Mr. Smith or Mr. Miroth, so there was no risk of future sexual abuse or domestic violence if the children stayed with her. *See, e.g.*, *id.* ¶ 46. The factual issue behind the allegations in this category is thus whether the two children were actually harmed or at risk of future harm.

The state court records show unambiguously that the parties litigated each of these issues, and the records also show the state court adjudicated them. First, the state court received evidence and heard arguments about whether the county offered resources and services to the Miroths, whether the Miroths took advantage of those resources and services, and whether there was any solution other than terminating their parental rights. *See, e.g.*, Ex. E at 41–42[2] (arguments about Mr. Miroth's desire to participate in treatment or improve his circumstances

---

[2] Citations in this format refer to the exhibits attached to the declaration of William Bittner, filed at ECF No. 38-1 on the docket of this action. The cited page numbers are those at the bottom right of each page.

and behavior); Ex. K at 127–32, 134–37, 138, 205–06 (same); *id.* at 87–88, 90–91, 185–99 (testimony about Ms. Miroth's efforts to show she could care for her children); *id.* at 152, 155–57, 160, 171, 178 (testimony by Ms. Miroth's therapist about her efforts to prevent the county from taking custody of her children and to take advantage of county services); *id.* at 220–21, 226–27 (attorney argument about alternatives to removal and available services). The parties had multiple opportunities to present evidence on this issue. *See, e.g.*, Ex. C at 15, 18–19 (evidence and court findings about efforts to prevent future domestic violence and the abuser's departure from California); Ex. K at 146 (summarizing evidence of Miroths' reaction to sexual abuse of A.M.); Ex. I at 65–67 (Ms. Miroths' testimony about her efforts to prevent domestic violence, sexual abuse and other harms). In the end, the state court expressly found "[r]easonable efforts were made to prevent or eliminate the need for removal from the home," but without success, and it decided to terminate the Miroths' parental rights based on that finding. Ex. D at 27; *see also, e.g.*, Ex. I at 69; Ex. J at 76; Ex. K at 232, 234–35.

Second, the state court received evidence and heard arguments about the Miroths' actions in the past, including Ms. Miroth's voluntary relinquishment of her parental rights of four previous children, the contested removal of a fifth child from the Miroths' care, allegations of past drug use, and their failures to care for their children's needs in the past. *See, e.g.*, Ex. B at 8 (petition alleging neglect of older siblings and use of methamphetamine); Ex. H at 57 (same); Ex. K at 92–96, 100–08 (testimony about circumstances of previous removals); *id.* at 125–26, 137–38 (evidence about Mr. Miroth's drug testing history); *id.* at 164–65 (testimony by Ms. Miroth's therapist about past removals of previous children); *id.* at 139–44 (attorney arguments about implications of past removals, including emphasis on how long ago they occurred); *id.* at 200–01 (testimony by Mr. Miroth about one previous removal). These records contradict the Miroths' allegation that the county or its officials misled the state court about the timeline of these removals or their circumstances. The parties and the court discussed those removals in depth on the record, and the timeline was clear. The state court records also show Ms. Miroth conceded under oath—contrary to her allegation in this case—that she used methamphetamine in the past. *Id.* at 94. Based on this evidence, the state court decided the Miroths' previous cases supported

1    the county's allegation that they were unlikely to protect A.M. and S.M. from harm, even though

2    the five other children had been taken from their care many years before.  *See* Ex. E at 40; Ex. F

3    at 47; Ex. K at 144–48, 231–38.

4          Third, the state court records show the parties presented evidence and made arguments

5    about harms and risks to A.M. and S.M.  This evidence included testimony and documentary

6    evidence showing A.M. was subjected to sexual abuse by Mr. Smith and the Miroths' failure to

7    protect A.M. from abuse.  *See, e.g.*, Ex. B at 7 (allegations about unsupervised time with sex

8    offender); Ex. C at 18 (attorney argument about abuser's location); Ex. E at 36 (offer of proof

9    about abuser's criminal history and Mr. Miroth's understanding of that history); Ex. K at 101–09,

10   111–21 (testimony by Mr. Miroth about sex abuser's presence in home and Miroths' reactions to

11   potential abuse).  The record also shows the parties made arguments and presented evidence

12   about the Miroths' domestic relationship, allegations of domestic violence and related risks to

13   A.M. and S.M.  *See, e.g.*, Ex. B at 6 (petition alleging Miroths had put A.M. at risk due to

14   domestic violence); Ex. E at 36 (offer of proof that Mr. Miroth would testify he did not assault or

15   batter Ms. Miroth); Ex. K at 105–06, 108 (testimony by Ms. Miroth about domestic violence by

16   Mr. Miroth and their relationship); *id.* at 110–111, 121–22, 132 (testimony by Mr. Miroth about

17   Ms. Miroth being violent, dishonest and manipulative).  The state court reviewed this evidence

18   and found A.M. had been sexually abused by Mr. Smith while she lived in the Miroths' home.

19   Ex. E at 38–40; Ex. K. at 146, 233–34.  The state court also found there had been a "physical

20   altercation" between the Miroths in front of A.M., Ex. E at 38; Ex. F at 47, and the court decided

21   the Miroths did not appreciate the gravity of the harm to A.M. or the risks of future harm to S.M.,

22   *see* Ex. K at 147.

23         In sum, the state court records show these same three essential issues arose in state court

24   and were actually litigated.  These issues also were "necessarily decided"—the Miroths do not

25   contend otherwise—because their resolution was not "entirely unnecessary" to the state court

26   judgment.  As this court previously concluded, although in a different context, the Miroths are "in

27   essence" now arguing that "the state court erred by incorrectly weighing the evidence before it."

28   Order (Apr. 17, 2023) at 8.  In short, they are relitigating the same disputes.

9

1          This is not to say the Miroths' current action overlaps perfectly with the state court

2    litigation.  They make a variety of allegations that do not fit within the three categories

3    summarized above.  For example, as summarized above, they allege Ms. Miroth's attorneys did

4    not represent her effectively, *see* Second Am. Compl. ¶ 61, they fault the state court for assigning

5    three different judges to their case, *see id.* ¶ 93, and they allege the county and its employees

6    "failed to give preferential consideration" to two family members with whom they and A.M. got

7    along well, instead placing her with Ms. Carter, with whom the Miroths have a strained

8    relationship, *see id.* ¶¶ 47, 63–64, 66–67, 81.  The Miroths also allege the county defendants'

9    actions fell short of state and federal standards, and they emphasize these allegations in their

10   response.  *See id.* ¶¶ 35, 54; Pls.' Resp. to Reply at 4.  But even assuming these allegations are

11   true, and even assuming the issues behind these additional allegations were not litigated, the

12   Miroths' Fourteenth Amendment claims would still be precluded.  The Miroths do not allege and

13   have not explained how they could prevail in this case without relitigating the factual issues

14   discussed above, i.e., whether there were alternatives to the removal of their children from their

15   home, the history of previous removals was not indicative of future harms, or A.M. and S.M. had

16   not been harmed and were unlikely to be harmed in the future.  Having reviewed the complaint

17   and state court records, the court finds the Miroths could not prove they were deprived of any

18   federal constitutional rights in this court without revisiting those issues.  In sum, their federal

19   claims depend necessarily on the successful litigation of disputes that the state court has already

20   resolved.  *See* Second Am. Compl. ¶¶ 129–31, 139–44, 147–50.

21          The Miroths also argue the state court litigation is not preclusive because it was about the

22   Miroths' actions, whereas this case is about the county defendants' actions.  *See* Pls.' Resp. to

23   Reply at 4–5.  There are several problems with this argument.  As the county defendants

24   persuasively contend, the Miroths' position mistakes claim preclusion for issue preclusion.  *See*

25   Defs.' Suppl. Br. at 6.  The county defendants do not ask this court to dismiss the complaint based

26   on similarities between the legal claims the Miroths now assert, but rather based on the

27   similarities between specific factual issues at issue in both cases.  *See Grande v. Eisenhower Med.*

28   *Ctr.*, 13 Cal. 5th 313, 323 (2022) (distinguishing claim and issue preclusion).

Next, as a practical matter, the result of the preclusion analysis does not depend on whether the disputed factual issues are framed in terms of the county officials' presentation of their case or in terms of the Miroths' ability to protect and care for their children.  The core factual issues are the same: Were there any viable alternatives to the termination of the Miroths' parental rights?  Does the Miroths' history show they could not protect A.M. and S.M.?  And were the two children harmed or at risk?  The state court's findings on these issues are judgments on the credibility and completeness of the evidence and the persuasiveness of the parties' arguments.  Revisiting those findings would in this case amount to second guessing the state court's decisions and findings—the very sort of second guessing the issue preclusion doctrine is meant to prevent.  *See Butcher v. Truck Ins. Exch.*, 77 Cal. App. 4th 1442, 1452 & n.6 (2000) (explaining issue preclusion "resolves the conflict between [the] competing values" of "correctness, uniformity, and repose").

Finally, the state court records unambiguously contradict the Miroths' allegations about the county officials' actions, fabrications and false or misleading claims.  Those records show the parties extensively discussed the services the county had offered and provided, the Miroths' past, and past harms and potential future harms to A.M. and S.M.  *See, e.g.*, *See* Ex. E at 38–41; Ex. K at 87–88, 90–91, 94, 127–32, 134–38, 144–48, 185–99, 205–06, 231–38.  The attorney who represented defendants in state court advocated on behalf of the defendant clients; the attorney pressed the position that the children were not safe at home, yes.  But the state court records do not bear out the Miroths' claims of falsehood and fabrication.  If the Miroths had identified some false statement or omission that was both material and beyond their ability to correct, the result might be different, but they have not.  As this court found after reviewing the same records more than two years ago, again in deciding a different legal question, "[t]he state court heard evidence regarding defendants' alleged misrepresentation."  Order (Apr. 17, 2023) at 8.  That conclusion still holds.  Further relitigation would be wasteful.

Because the county defendants have satisfied each of the five threshold requirements of the California doctrine of issue preclusion, this court must consider "the public policies underlying the doctrine before concluding that collateral estoppel should be applied in a particular

1  setting." *Lucido*, 51 Cal. 3d at 342–43.  Those policies include the "preservation of the integrity

2  of the judicial system, promotion of judicial economy, and protection of litigants from harassment

3  by vexatious litigants."  *Id.* at 343.

4        Fundamentally, public policy favors dismissal.  Dismissing the Miroths' Fourteenth

5  Amendment claims would preserve the integrity of the judicial system and scarce judicial

6  resources by preventing the Miroths—unsuccessful state court litigants—from pursuing a

7  repetitive challenge about an application of state law to a dispute between a county and its

8  residents.  If the state court erred, that error should have been raised and pursued before the

9  California appellate courts in the direct appeal the Miroths filed, not in a follow-on action in this

10  court, several years later.  The factual issues discussed above were indeed "at center stage" in the

11  state court proceedings.  *See Rodriguez v. City of San Jose*, 930 F.3d 1123, 1136 (9th Cir. 2019)

12  (applying California law); *see also, e.g.*, Ex. K at 231–38 (state court's discussion of its

13  reasoning, prominently featuring disputed issues).  Revisiting those issues here and now "would

14  undermine the issue preclusion doctrine's goals of comity and judicial economy."  *Id.*  The court

15  therefore dismisses the Miroths' first three claims.

16        As summarized above, the Miroths' fourth claim is against the county itself under a theory

17  of *Monell* liability.  The Miroths allege the county had several unconstitutional policies, such as

18  "withholding exculpatory evidence," "consciously disregard[ing] efforts of parents to ameliorate

19  their situation," and "not providing safety plans of other pre-placement services to parents."

20  Second Am. Compl. ¶ 154.  These allegations are derivative of their allegations against the

21  individual defendants.  Because the state court litigation precludes the Miroths from relitigating

22  the issues at the center of their case against the individual county defendants, it also precludes

23  them from litigating claims against the county itself.  *See Lockett v. County of Los Angeles*,

24  977 F.3d 737, 741 (9th Cir. 2020) ("*Monell* claims . . . require a plaintiff to show an underlying

25  constitutional violation.").

26        Finally, the court must decide whether to permit any further amendments to the complaint.

27  Plaintiffs have previously amended their complaint, twice.  They have not explained what

28  additional factual allegations they would raise in a further amended complaint.  Nor can the court

1  envision any amendments that could avoid the preclusion rule discussed above.  The court

2  therefore will not permit further amendments to the pleadings.  The court also declines again to

3  exercise supplemental jurisdiction over the Miroths' remaining state law claims under 28 U.S.C.

4  § 1367(c), including the claims against Ms. Carter.  *See* Order (Aug. 15, 2024), ECF No. 78;

5  Order (Apr. 17, 2023) at 10–11; Order (Oct. 28, 2022) at 12.

6  **III.    CONCLUSION**

7         Claims one, two, three, and four are dismissed without leave to amend.  The court declines

8  to exercise supplemental jurisdiction over the remaining state law claims under 28 U.S.C.

9  § 1367(c), which are dismissed without leave to amend, but also without prejudice to refiling in

10  state court.  The clerk's office is instructed to close this case.

11         IT IS SO ORDERED.

12  DATED:  October 9, 2025.

_____
SENIOR UNITED STATES DISTRICT JUDGE